(No. 51938

GATES DIVISION, HARRIS-INTERTYPE CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Linda Hendricks, Appellee).

*Opinion filed January 23, 1980.*

Henry D. Noetzel & Associates, Ltd., of Chicago (John E. Mitchell, of counsel), for appellant.

James N. Keefe, of Keefe, Snowden, Gorman & Brennan, of Quincy, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

In this workmen's compensation case, the employer, Gates Division, Harris-Intertype Corporation (hereinafter Gates Division), appeals directly to this court under our Rule 302(a) (73 Ill. 2d R. 302(a)). The appeal is taken from the Adams County circuit court order confirming the Industrial Commission's award, which affirmed the finding of the arbitrator that the claimant, Linda Hendricks, is permanently and totally disabled. It is uncontroverted that the employee received injuries which arose out of and in the course of employment. The only issue on review is whether she is entitled to an award for permanent total disability under section 8(f) of the Workmen's Compensation Act. Ill. Rev. Stat. 1973, ch. 48, par. 138.8(f).

Claimant had been employed by Gates Division as a machine operator for approximately two years. The machine she operated was usually filled with a nonflammable cutting wax. On January 16, 1974, however, the machine was filled with a cutting oil which was composed of a kerosene mixture. While claimant operated the machine, oil sprayed out, wetting her clothing. After working for approximately one hour, claimant took a break. She lit a cigarette and her shirt ignited. As a result, she received burns over 40% of her body. She sustained third-degree burns on both hands, and first- and second-degree burns on her arms, the upper back of her legs and on scattered areas of her chest, abdomen and back.

The employee was hospitalized from the date of the accident to March 12, 1974. Initially her burns were topically treated with Sulfamylon and Hubbard tank debridement. Approximately three weeks following the accident, skin graft operations were performed on each hand. She was discharged on March 12, 1974, but she continued to receive daily physical therapy as an outpatient.

Claimant was readmitted to the hospital on April 4, 1974, for a resumption of inpatient care. During this second period of hospitalization, she underwent a series

of skin-grafting and debridement operations on both forearms, the backs of both thighs and on the ring and middle fingers of her left hand. The employee was discharged from the hospital on July 19, 1974, and she resumed the outpatient physical therapy program.

Range-of-motion data were recorded from July 1974 through January 1976, and the data were submitted at the hearing before the arbitrator to establish the extent of the employee's loss of use of her hands. The data submitted indicate a marked increase in the range-of-motion measurements from July of 1974. However, by October of 1975 the range of motion of the fingers ceased to improve. Thus, on January 16, 1976, the formal physical-therapy-treatment program was discontinued.

The hospital records were admitted into evidence, and the employee testified as to her physical condition at the hearing before the arbitrator. Claimant stated that her left hand became numb and nonfunctional at times and that both hands were particularly swollen and stiff in the mornings; she continuously exercised her hands throughout each day to reduce the swelling. The employee testified as to the sensitivity of her hands. Housework involving the use of cleaning agents was impossible since they caused her skin to break out. Though she wore special gloves, winter weather would cause her hands to crack and bleed. Her hands also got cold very easily. Exposure to the sun would turn the skin on the hands red and cause it to fester and blister. The employee stated that she applied cocoa butter to her hands during all seasons.

Hendricks testified as to her difficulty in performing basic chores. Due to her inability to grip, she testified specifically as to her inability to care for her daughter's hair, pick up certain items, comb her own hair, cut meat, drive a car, cook, mop or sweep, open door handles on cars, iron or do laundry. She was able, however, to brush her own hair and teeth and to vacuum and dust. She was also able to write by holding the writing utensil between

the thumb and the forefinger. The employee testified as to the discomfort of her condition. She sleeps only on her stomach, with her arms raised above her head. She avoids wearing knit fabrics, as they cling to her burn scars. She cannot walk for an extended period of time due to irritation caused by the rubbing together of the burn scars on her thighs.

Evidence was also presented concerning the employee's potential for reentry into the job market. Claimant, a high school graduate, had worked primarily as a machine operator. Her only other job experience was that of a fry cook in a restaurant. The employee earned average scores in all rehabilitation-aptitude tests taken, with the exception of her above-average score in the beauty-operator test. She testified that she would be unable to become a beautician, as fine motor movements of the hands would be required and, further, her hands would be exposed to irritating shampoos while washing customers' hair. The rehabilitation-program staff suggested that she train to become a motel clerk. She took no action on this suggestion.

In view of the nature and extent of her injuries and upon a consideration of her rehabilitation potential, the arbitrator entered an award for permanent total disability under section 8(f) of the Act, finding that the employee had suffered permanent and complete loss of use of both hands in addition to other bodily injuries. The Commission upheld the award, and the Adams County circuit court confirmed the Industrial Commission. The employer contends on this appeal that the employee failed to establish a condition of permanent total disability.

We have often stated that an employee is permanently and totally disabled within the meaning of the Workmen's Compensation Act when such employee is unable to make some contribution to the work force sufficient to justify the payment of wages. (*A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482; *C. R. Wikel, Inc. v. Industrial Com.* (1977), 69 Ill. 2d 273, 278; *Consoli-*

*dated Freightways, Inc. v. Industrial Com.* (1976), 64 Ill. 2d 312, 320; *Interlake Steel Corp. v. Industrial Com.* (1975), 60 Ill. 2d 255, 259.) However, the employee need not demonstrate total physical and mental incapacity or helplessness before an award for permanent total disability can be granted under the Act. (*E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 360.) Thus, we have stated that a person is totally disabled when he cannot perform services except those that are so limited in quantity, dependability or quality that there is no reasonably stable market for them. (*South Import Motors, Inc. v. Industrial Com.* (1972), 52 Ill. 2d 485, 489.) It is the burden of the employee to establish the extent and permanency of the work-related injuries in order to recover under the Act. *A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482.

To establish loss of use of a hand, the loss must be shown to be that of the hand rather than mere loss of use of fingers. It must be shown that normal use of the hand has been completely taken away. (*Meade v. Industrial Com.* (1971), 48 Ill. 2d 215, 219.) The employer contends first that the evidence fails to establish permanent and total disability and, second, that the employee has demonstrated loss of use of fingers only. Thus, it is the employer's position that the employee failed to sustain her burden of proof in establishing permanent and total disability to her hands. We have examined the record of the proceedings below and find the employer's position to be without merit. (See *National Lock Co. v. Industrial Com.* (1975), 62 Ill. 2d 51, in which this court upheld an award for a pension for life due to the permanent and complete loss of use of both hands.) There may be some minimal functional use remaining in the claimant's hands; however, they are functionally useless for any employment which can be performed by the claimant. Although she had a high mark as a beautician on the rehabilitation-aptitude test, her testimony was to the effect that the injury to her hands prevented her from taking care of her

own hair and of her daughter's. The claimant suffered not only restricted movement of her fingers, but also severe burns over both of her hands and forearms. The sensitive skin on the surface of both hands, coupled with the restricted movement of the fingers, left the hands useless in any type of employment. It should also be noted that the finding of permanent total incapacity was not based solely on the complete loss of use of both hands. The arbitrator, after reciting the finding of loss of use of both hands, stated that such loss, "together with other bodily injuries," rendered her totally incapacitated. The severe burns over her body left her skin so sensitive and susceptible to irritation that the normal movements, or even sitting, associated with any gainful employment were extremely painful, if not impossible. Even if there are certain occupations, such as motel clerk, that a person with disabled hands can perform, the burns to other parts of claimant's body could have reasonably been found to prevent her from being employed in those pursuits.

The record contains both subjective and objective evidence concerning the injuries suffered, physical capabilities and rehabilitation potential. There was sufficient credible evidence for the Industrial Commission to conclude that the employee's injuries were severe enough to prevent her from being gainfully employed in a reasonably stable market for which she was qualified. (*Interlake Steel Corp. v. Industrial Com.* (1975), 60 Ill. 2d 255, 259.) The extent of disability is a question of fact to be determined by the Industrial Commission and not to be set aside unless contrary to the manifest weight of the evidence. (*Keystone Steel & Wire Co. v. Industrial Com.* (1978), 73 Ill. 2d 290, 293; *Szabo v. Industrial Com.* (1978), 73 Ill. 2d 282, 288.) Inasmuch as the finding of complete and permanent disability was not contrary to the manifest weight of the evidence, we affirm the judgment of the Adams County circuit court.

*Judgment affirmed.*