(No. 52926.-

NILES POLICE DEPARTMENT, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Clarence Brink, Appellee).

*Opinion filed January 20, 1981.*

530

SIMON, J., took no part.

Musschoot, Womack & Galich, of Chicago (Andrew A. Galich and Michael C. Piller, of counsel), for appellant.

Murges & Bowman, Ltd., of Chicago (George J. Murges and John T. Bowman, of counsel), for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

An arbitrator for the Industrial Commission awarded claimant, Clarence Brink, compensation from respondent, the village of Niles police department, for permanent total disability pursuant to section 8(f) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(f)). The Commission affirmed the award, and its decision was confirmed by the circuit court of Cook County. Respondent appealed to this court under our Rule 302(a). 73 Ill. 2d R. 302(a).

Claimant, who was 54 years of age at the time of the

accident, had worked 4½ years as maintenance director for respondent prior to April 15, 1975. On that date claimant, at the direction of his supervisor, was melting down used lead for bullets. The lead, which was heated to 1,800 degrees Fahrenheit, exploded, spraying claimant with molten lead, some of which covered and entered his eyes. Claimant underwent emergency treatment to remove lead from the exposed parts of his body and from his eyes, and underwent further surgery on subsequent dates to remove other pieces of lead from his eyes. He had no previous problems with his eyes and did not wear glasses.

Claimant testified that prior to working for respondent he had worked for a dairy company 22 years and that he had attended two years of college. Since the accident, he said that he constantly wears dark glasses with shields on the sides, even in the shower, and sometimes wears welders' goggles that fit around his face and prevent light from entering the center or sides. He no longer reads and limits his television watching to one hour a day. He complained that his eyes became sore and watered in any kind of light, and will occasionally fester. Some mornings his left eyelid is stuck shut and he has to use his fingers to open it. Claimant had sought a job in a talk with the Niles village manager sometime in 1976, but had not sought employment since he moved to Florida in September of that year. The Niles chief of police testified concerning the benefits received by the claimant following his accident and stated that claimant never proved to the department's satisfaction that he was physically fit to come back to work.

Experts for the claimant and respondent disagreed on claimant's present condition and whether it was caused by the lead explosion. Claimant's treating physician, Dr. Richard Katz, testified that claimant suffered multiple abrasions of the cornea and conjunctiva and had severe photophobia, which is extreme sensitivity to light. Dr.

Katz prescribed eye drops and dark glasses for claimant, noting there was no treatment for photophobia. He stated there was no relation between visual acuity, which remained good in claimant, and photophobia. According to Dr. Katz, photophobia may be present with no objective symptoms. In his opinion there was a causal relationship between the accident and claimant's condition. It was his opinion also that the only type of work claimant could perform would be that which did not involve continuous use of his eyes.

Dr. Morris D. Bennin testified for the respondent that he examined claimant and diagnosed mixed astigmatism with presbyopia, a normal condition of age requiring glasses for reading. This condition was not caused by trauma. There were no objective findings of photophobia, which Dr. Bennin defined as a more than normal reaction to light, but he prescribed tinted glasses for claimant. He stated there could be subjective symptoms of photophobia without objective symptoms. It was Dr. Bennin's opinion that claimant is able to work.

Dr. Bruce Golden, called by respondent, testified that he examined claimant and diagnosed his condition as dry-eye syndrome, in this case caused by the failure of tears to form evenly over the eye, leaving irritating dry spots on the cornea. It was Dr. Golden's opinion that this condition was not caused by trauma. He stated photophobia is a subjective complaint which may have physical manifestations, but he did not find any such physical manifestations in claimant. It was his opinion that the claimant could return to work.

Dr. John Fournier testified for claimant that his examination of claimant consisted of several tests. One test was contralight testing, which showed a marked decrease in acuity when illumination was increased. Dr. Fournier observed increased tear production and involuntary eyelid closing during the contralight testing, which

indicated unusual discomfort. He diagnosed the condition as dry-eye syndrome and bilateral photophobia. It was his opinion that this condition was caused by trauma, and is permanent. Dr. Fournier noted that someone with photophobia could be in the sunlight occasionally without dark glasses for short periods, but would experience discomfort. His suggested treatment would be the wearing of dark glasses, hourly eye drops and ointment on the eyes at night. It was his opinion that the types of work claimant could perform would be limited.

Respondent also called a private investigator to testify before the Commission. That witness had conducted a surveillance of claimant in Port Charlotte, Florida, over a period of several months in 1977. The investigator observed claimant outside in sunlight without his glasses on two occasions. Several minutes of video tape and several photographs purporting to show claimant outside his Florida home without his glasses were introduced into evidence. This evidence represented the results of over 20 hours of surveillance during some 12 trips by the investigator to claimant's home.

Respondent argues that the Industrial Commission finding that claimant is permanently and totally disabled is erroneous. It is, of course, axiomatic that a factual determination by the Industrial Commission as to the nature and extent of disability will not be set aside by a court unless that finding is contrary to the manifest weight of the evidence. (*Gates Division, Harris-Intertype Corp. v. Industrial Com.* (1980), 78 Ill. 2d 264; *Chicago Transit Authority v. Industrial Com.* (1975), 61 Ill. 2d 78; *Board of Trustees of University of Illinois v. Industrial Com.* (1973), 55 Ill. 2d 293.) As we have repeatedly stated, it is the province of the Industrial Commission to weigh the evidence and draw reasonable inferences therefrom in the first instance, and we will not overturn its findings simply because a different inference could be

drawn. *Sterling Steel Casting Co. v. Industrial Com.* (1979), 74 Ill. 2d 273.

A claimant is permanently and totally disabled under the Workmen's Compensation Act when the claimant is unable to make some contribution to the work force sufficient to justify the payment of wages. (*Gates Division, Harris-Intertype Corp. v. Industrial Com.* (1980), 78 Ill. 2d 264; *A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482; *C.R. Wikel, Inc. v. Industrial Com.* (1977), 69 Ill. 2d 273; *Consolidated Freightways, Inc. v. Industrial Com.* (1976), 64 Ill. 2d 312.) While the burden of proof is upon the claimant to show the nature and extent of his injuries and the resulting inability to secure gainful employment (*A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482), a claimant is not required to demonstrate total incapacity or helplessness before a permanent total disability award may be granted under the Act. (*Inland Robbins Construction Co. v. Industrial Com.* (1980), 78 Ill. 2d 271; *E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353.) The respondent argues, however, that the claimant must prove he has actively sought some kind of employment and been turned down because of the disability. We agree that there is such an initial burden upon the claimant. However, one may be so disabled " 'that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist.' " (2 A. Larson, Workmen's Compensation sec. 57.51, at 10–164.22 (1980), quoting *Lee v. Minneapolis Street Ry. Co.* (1950), 230 Minn. 315, 320, 41 N.W.2d 433, 436. See *Arcole Midwest Corp. v. Industrial Com.* (1980), 81 Ill. 2d 11; *Gates Division, Harris-Intertype Corp. v. Industrial Com.* (1980), 78 Ill. 2d 264; *South Import Motors, Inc. v. Industrial Com.* (1972), 52 Ill. 2d 485.) Once a claimant establishes that his disability is in that category, it then becomes the burden of

the respondent employer to prove the availability of steady work. (*Sterling Steel Casting Co. v. Industrial Com.* (1979), 74 Ill. 2d 273; *E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353.) "There is no presumption that, merely because claimant is physically able to do light work, appropriate employment is regularly available to him." (2 A. Larson, Workmen's Compensation sec. 57.51, at 10—164.53-54 (1980).) The respondent made no attempt to demonstrate the availability of work suitable to claimant's limited capabilities (*Inland Robbins Construction Co. v. Industrial Com.* (1980), 78 Ill. 2d 271), and in the circumstances of this case, we believe claimant's showing has been sufficient. (*Sterling Steel Casting Co. v. Industrial Com.* (1979), 74 Ill. 2d 273.) Two experts expressed the opinion that claimant would have difficulty performing any kind of work. One stated claimant would be unable to perform work which would involve the continuous use of his eyes. While respondent elicited testimony that even with claimant's disability he could possibly type (though there is no evidence that claimant has typing skills) and that he could possibly count money in subdued lighting, respondent has not established that there is any reasonably stable labor market for individuals so skilled.

Respondents' videotapes showing claimant in sunlight do little to support its case. From more than 20 hours of surveillance the investigator obtained less than 5 minutes of film showing claimant outdoors without dark glasses. This is not inconsistent with Dr. Fournier's opinion that someone with photophobia could be in the sunlight without dark glasses for short periods with some discomfort, and it falls considerably short of establishing fraud or misrepresentation by claimant or his fitness for normal employment.

Respondent also argues that the claimant has not established his disability by competent evidence, "of

which there are or have been objective conditions or symptoms proven" as required by section 8(b)(7) of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(b)(7)). (This provision was deleted by Public Act 79—79, effective July 1, 1975 (1975 Ill. Laws 211), shortly after the date of claimant's accident.) Respondent's contention is not well taken. The above section refers to objective conditions or symptoms of the accidental injury, not of disability. *Consolidated Freightways, Inc. v. Industrial Com.* (1976), 64 Ill. 2d 312; *Pathfinder Co. v. Industrial Com.* (1976), 62 Ill. 2d 556; *City of Chicago v. Industrial Com.* (1974), 59 Ill. 2d 384.

Respondent's final argument is that it was denied due process of law because it was not allowed to present further rebuttal medical testimony to the Commission prior to oral argument. It appears that on February 27, 1979, after the parties had each presented the medical testimony of two experts, the commissioner closed proofs and set oral argument for July 18, with the statement that respondent could bring in an expert if it was absolutely necessary to rebut one piece of evidence. The commissioner expressed reluctance to keep proofs open in a case nearly 4 years old. There is a motion in the record dated July 3, 1979, which seeks to continue the oral argument beyond July 18. There is no order continuing the case and there is a dispute whether an oral order for continuance was granted. It is, of course, appellant's responsibility to demonstrate from the record that the error he claims actually occurred. (*Berry v. Industrial Com.* (1978), 72 Ill. 2d 120.) This court has generally held that whether or not additional evidence will be heard by the Commission is a question within its sound discretion. (*Wirth v. Industrial Com.* (1974), 57 Ill. 2d 475.) So far as the record reveals, the Commission refused to continue the case beyond the date set for oral argument and the commissioner involved denied allowing the motion to continue

the hearing for additional proofs. There is nothing in this record indicating the necessity to keep proofs open to rebut medical testimony, or that the Commission abused its discretion in refusing to do so.

In this case it is clear that differing reasonable inferences could be drawn from the medical evidence together with the claimant's testimony, and we cannot say that the Commission's determination that claimant met his burden of proving that he is permanently and totally disabled by the accident is contrary to the manifest weight of the evidence. The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.