(No. 57065.—

CECO CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Alejandro Garcia, Appellee).

*Opinion filed March 25, 1983.*

Wiedner & McAuliffe, Ltd., of Chicago (Russell P. Standlee, of counsel), for appellant.

Fritzshall, Fritzshall & Bensinger, of Chicago, for appellee.

JUSTICE MORAN delivered the opinion of the court:

Claimant, Alejandro Garcia, sought workmen's compensation for an injury which he sustained while in the employ of respondent, Ceco Corporation. An arbitrator awarded claimant compensation for permanent partial disability to the extent of 20% of the man as a whole. Both parties appealed, and the Commission found claimant to be permanently and totally disabled. The circuit court of Will County confirmed the decision of the Commission, and respondent brings a direct appeal to this court (73 Ill. 2d R. 302(a)).

The sole issue is whether the Commission's finding of total and permanent disability is contrary to the manifest weight of the evidence.

On November 4, 1977, claimant was employed by respondent as a welder. On that date, claimant fell on a steel bar, injuring his lower back.

The following evidence was produced at the hearing before the arbitrator. Claimant testified, through an interpreter, that he was in good physical condition prior to the accident, but that immediately thereafter he "hurt all over." On November 10, 1977, he consulted his family physician, Dr. Spurgeon Green. Dr. Green admitted claimant to Silver Cross Hospital, where he received therapy and pain shots. He was discharged on December 16 and given a corset to wear. Claimant stated that, at the time of his discharge, he continued to "hurt all over" and his right side was numb.

Subsequently, he received outpatient treatment at the hospital, and was readmitted in January of 1978. A myelogram was administered, after which claimant underwent a laminectomy. He was discharged in February but continued physical therapy and consulted his doctor every month.

On September 25, 1978, claimant returned to work at Ceco, but his employment was terminated four days

later. He stated that his job required him to bend and use a hammer. He experienced numbness and soreness on his right side, and continues to do so. He further stated that he was susceptible to fainting spells.

On cross-examination, claimant indicated that he was hospitalized for two weeks in September of 1977, following an automobile accident. He also stated that, after he was terminated, his union filed a grievance but he was not rehired. On re-direct examination, claimant testified that he had been employed by Ceco for five years prior to the accident. He also indicated that he did not receive a back injury in the car accident.

Dr. Robert Busch, a physician specializing in traumatic surgery, testified on behalf of the claimant. He stated that claimant suffered from a spasm which "radiated into both sides and down the posterior aspect of both thighs with sciatic radiation of spasm bilaterally." His legs manifested a stiffness, weakness and resistance to motion. There was also an operative scar in the midlumbosacral area which "was thickened, hypersensitive, roughened, indurated and raised." In his opinion, claimant suffered from a permanent herniated disc condition and would be in need of further treatment, including possible surgery. Dr. Busch concluded that claimant would be unable to perform heavy work involving bending, turning, lifting, or twisting. He stated that he may be able to do light work on a part-time basis.

On cross-examination, the witness testified that claimant could work as a welder if the job involved no bending, lifting, turning or twisting. However, he stated that he would be unable to work an eight-hour day at any job.

Respondent introduced into evidence two reports prepared by Dr. James Dupre, a neurosurgeon. The reports essentially indicated that claimant was recovering "well" following surgery, and that his operative scar was "well

healed." Other than a defect in the L-4/L-5 portion of the back, he noted no significant abnormalities.

Respondent also introduced into evidence a report indicating that claimant was denied unemployment compensation because he was discharged from Ceco on the grounds of misconduct. Other evidence revealed that the reason given for his discharge was poor work performance.

Both parties introduced additional evidence at the hearing before the Commission. Dr. Archibald McCoy, a neurological surgeon, testified on behalf of the respondent. He stated that, in January of 1978, he performed a laminectomy upon claimant, which involved the removal of a herniated invertebral disc in the lumbar region at L-4/L-5. On September 21, 1978, Dr. McCoy wrote a note for claimant indicating that he was under his care and could return to light-duty work.

This witness examined claimant again in July of 1979. This examination revealed that claimant had a diminished sensation to pinpricks over the entire right side of his body. There was no evidence of muscular atrophy, or neurological impairment, other than an increased hypalgesia in the right leg. At that time, the witness did not believe that further hospitalization was required.

Dr. McCoy opined that claimant was capable of light work but could not perform tasks involving heavy lifting, bending, straining or twisting. He felt that claimant could be safely employed as a welder, as long as no bending or twisting was required.

On cross-examination, he stated that he administered to claimant an electromyelogram (EMG) approximately six months after the surgery. A physician who interpreted the results of the EMG found irritation at the L-5 level and an irregularity at the L-4 and S-1 dermatome. In his own report, Dr. McCoy had written that the ligamentum at the L-4/L-5 level was significantly thickened

for an individual of claimant's age. The witness stated that this condition could result in an added strain on the back at this level.

During re-direct examination, Dr. McCoy stated that claimant's condition was difficult to evaluate because he either exaggerated his pain, had a low threshold for pain, or suffered an anxiety reaction. He admitted, however, that "[t]his is all conjecture." He believed there was an anxiety factor which could be related to the "legal aspects" of his claim. The witness saw no evidence of arthritic changes but did not review any X rays which could suggest such changes.

On re-cross-examination, the witness was asked if claimant's lack of funds to purchase necessary pain medication could produce an anxiety reaction. He responded that it could but further stated that he felt claimant tended to overreact. He no longer believed claimant exaggerated, however, as he did prior to the operation.

Miles Levin, a vocational consultant employed by Crawford Rehabilitation Service, also testified for respondent. He stated that he interviewed claimant, concerning vocational possibilities, pursuant to an order from the Industrial Commission. He felt that claimant was a good candidate for specialized job placement, and that a welding job would be suitable.

Levin further testified that he has attempted to locate a position for claimant, and will continue to do so. However, employment opportunities in the Joliet area were decreasing. He did not believe placing claimant in a retraining program was appropriate because of his limited ability to converse in English.

Dr. E. Thomas Marquardt, an orthopedic surgeon who testified for respondent, stated that claimant was inappropriately treated. He believed that a neurosurgeon should have been consulted earlier. He also stated, contrary to claimant's doctor, that a person who has numb-

ness in the anterior portion of the thigh could not have sciatica. On cross-examination, the witness conceded that he never examined claimant.

Dr. Spurgeon Green, the family physician, again testified on claimant's behalf. He stated that claimant suffered from acute sciatica and atrophy, with accompanying weakness and hypalgesia, of the right leg. His condition has deteriorated over time, and there are indications of nerve damage in his legs. Claimant was admitted to a hospital in August of 1979, and was diagnosed as having acute sciatica with right quadricep atrophy and a prolapse disc. He defined a "prolapse disc" as a disc between the vertebrae which protrudes abnormally and compresses nerve roots. In his opinion, claimant's present condition of ill-being is permanent.

On cross-examination, the witness stated that he was not Board certified as an internist or a "family" practitioner. He also stated that claimant was permanently disabled, and would eventually become crippled.

Dr. Robert Busch again testified on claimant's behalf, and essentially concurred with Dr. Green's diagnosis. In response to a hypothetical question, he stated that "this patient could not do [welding work] or any work for that matter."

Claimant testified concerning his persistant pain, numbness, and frequent hospitalizations. On cross-examination, he stated that he has attempted to find another job, but is continually rejected because of his back injury. His last interview was with Caterpillar Tractor Company.

Respondent then called as a witness Jo Staehely, the personnel assistant for Caterpillar Tractor Company. She testified that claimant prepared an employment application form in October of 1978, and she interviewed him the following month. Although he was not hired, claimant was never given a medical exam and was not re-

jected on the basis of his health.

Two other witnesses testified for respondent and described the welding operation at the company. The essence of their testimony was that welding required little or no bending and could be performed in a standing or sitting position.

Respondent contends that claimant is not totally and permanently disabled because he is capable of obtaining gainful employment without endangering his health or life. It is argued that, since claimant is not obviously unemployable, the burden was upon him to prove the unavailability of suitable employment. Respondent alleges that claimant failed to produce any evidence of diligent attempts to find work.

Claimant argues that there was clear and convincing medical evidence to support a claim of total disability. Alternatively, he contends that even if his disability is limited so that he is not obviously unemployable, he sufficiently established the unavailability of regular employment. It is therefore argued that the burden was upon respondent to prove the availability of suitable employment, and that this burden was not met here.

This court has frequently held that an employee is totally and permanently disabled when he "is unable to make some contribution to the work force sufficient to justify the payment of wages." (*E.g., Gates Division, Harris-Intertype Corp. v. Industrial Com.* (1980), 78 Ill. 2d 264, 268; *Arcole Midwest Corp. v. Industrial Com.* (1980), 81 Ill. 2d 11, 15.) The claimant need not, however, be reduced to total physical incapacity before a permanent total disability award may be granted. (*Interlake, Inc. v. Industrial Com.* (1981), 86 Ill. 2d 168, 176; *Inland Robbins Construction Co. v. Industrial Com.* (1980), 78 Ill. 2d 271, 275.) Rather, a person is totally disabled when he is incapable of performing services except those for which there is no reasonably stable

market. (*A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, 487.) Conversely, an employee is not entitled to total and permanent disability compensation if he is qualified for and capable of obtaining gainful employment without serious risk to his health or life. (*E.R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 362.) In determining a claimant's employment potential, his age, training, education, and experiences should be taken into account. *A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, 489; *E.R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 362.

In considering the propriety of a permanent and total disability award, this court recently stated:

> "Under *A.M.T.C.*, if the claimant's disability is limited in nature so that he is not obviously unemployable, *or if there is no medical evidence to support a claim of total disability*, the burden is upon the claimant to establish the unavailability of employment to a person in his circumstances. However, once the employee has initially established that he falls in what has been termed the 'odd-lot' category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market (2 A. Larson, Workmen's Compensation sec. 57.51, at 10—164.24 (1980)), then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant (2 A. Larson, Workmen's Compensation sec. 57.61, at 10—164.97 (1980))." (Emphasis added.) *Valley Mould & Iron Co. v. Industrial Com.* (1981), 84 Ill. 2d 538, 546-47; *Interlake, Inc. v. Industrial Com.* (1981), 86 Ill. 2d 168, 177.

In the instant case, there was sufficient evidence to support a claim for total disability. Claimant testified at length as to his persistent pain, numbness and frequent hospitalizations. Two medical experts agreed that he is permanently disabled. As previously noted, Dr. Busch testified, before the Commission, that an individual in circumstances similar to claimant would be unable to perform

"any work," and may require further surgery. Although respondent's medical experts rendered contrary opinions, the resolution of conflicting medical testimony is a question of fact for the Commission. Its determination will be upheld unless contrary to the manifest weight of the evidence. *E.g., Caradco Window & Door v. Industrial Com.* (1981), 86 Ill. 2d 92, 99.

Further evidence revealed that claimant is approximately 32 years of age, received a ninth-grade education in Mexico and converses primarily in Spanish. He was employed as a welder for five years prior to the injury, and a witness for respondent testified that retraining was inappropriate.

Because claimant met his initial burden of proof concerning his disability, it was respondent's duty to prove that suitable employment was reasonably available. This burden was not met here. The most that can be said is that respondent's evidence indicated claimant was capable of performing his prior job as a welder or other tasks involving "light duty." However, the availability of such employment was insufficiently established. (See *Niles Police Department v. Industrial Com.* (1981), 83 Ill. 2d 528, 535 (an employer must prove that there are jobs the claimant can perform and that such jobs are reasonably available); *E.R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 364.) Respondent's own witness testified that he has been unable to secure employment for claimant, and that employment opportunities have decreased in the Joliet area.

From an evaluation of the evidence and the medical testimony, the Commission could have concluded that claimant is unable to secure permanent employment. This decision will not be set aside merely because this court may draw different inferences from the record. *Keystone Steel & Wire Co. v. Industrial Com.* (1981), 85 Ill. 2d 178, 185; *Health & Hospitals Governing Com. v. Industrial Com.* (1979), 75 Ill. 2d 159, 164.

Inasmuch as the finding of total and permanent disability was not contrary to the manifest weight of the evidence, the judgment of the circuit court of Will County is affirmed.

*Judgment affirmed.*