HELEN BEELER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Sherwin Williams, Appellee).

Fifth District   No. 5—88—0307WC

Opinion filed January 18, 1989.—Rehearing denied March 10, 1989.

John J. Larsen, Jr., of St. Louis, Missouri, for appellant.

Robert L. Mueller, of Livingstone, Mueller, O'Brien & Davlin, of Springfield, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

Petitioner, Helen Beeler, widow of Melvin Beeler, filed an application for adjustment of claim under the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1981, ch. 48, par. 172.36 *et seq.*), naming as respondent therein Sherwin Williams Chemical Division, Mr. Beeler's former employer. An arbitrator denied petitioner's claim for compensation, finding that petitioner had failed to prove decedent's death arose out of and in the course of his employment with respondent or

was causally related thereto. Petitioner obtained a reversal of the arbitrator's decision in proceedings before the Industrial Commission. The Commission found that decedent had been exposed to an occupational hazard in the course of his employment that was causally related to his death. Respondent sought review of the Commission's order in the circuit court of Montgomery County, and on May 2, 1988, the court set aside the Commission's award, holding that the Commission's decision was against the manifest weight of the evidence. Petitioner appeals raising a single issue, whether the decision of the Industrial Commission was against the manifest weight of the evidence.

At the hearing before the arbitrator the petitioner testified that she had met her husband, Melvin Beeler, in April of 1941. At that time he had just started to work for Eagle Pitcher Industries, the predecessor of Sherwin Williams. He was in good health and had no respiratory ailments. Mr. Beeler was a member of the armed services from July 1942 to December 1945. He returned from the service with no apparent health problems and resumed his employment at Eagle Pitcher's plant, where he was continually employed up to the date of his death on May 15, 1981.

On days when he returned from work without having showered, he was completely covered with "white oxide," a dust-like substance. He had dust on his face on days when he had not worn a respirator. In 1962 Mr. Beeler, a nonsmoker, developed a chronic cough and respiratory problems. His health steadily deteriorated. His condition seemed to be worse upon his return home from work; however, it would improve somewhat by morning. Mr. Beeler suffered an asthmatic attack on the morning of May 15, 1981, while preparing his lunch for work and died a short time later.

Lester Roemlin, formerly employed as a supervisor for Eagle Pitcher Industries and respondent, Sherwin Williams, testified concerning Mr. Beeler's working conditions. Roemlin stated that he had seen Beeler covered with zinc oxide dust. Beeler's job entailed sweeping dust off the floor of the plant and repairing bags containing the dust. Roemlin said there was not much dust in the plant, but respirators were provided to all employees. Beeler did not always wear a respirator. The company did not enforce rules requiring employees to wear respirators.

The transcript of Dr. Noah Dixon's deposition was introduced as evidence. Dixon testified that he had served in the Air Force for six years as a senior flight surgeon and as a consultant concerning pulmonary diseases prior to entering private practice in 1961. Dr. Dixon was board-certified in internal medicine, allergy and pulmonary dis-

eases, and immunology. He served on the staff of Southern Illinois University Medical School and was a consultant to intensive care services at St. John's Hospital in Springfield, Illinois. Dixon's practice was limited primarily to allergy and pulmonary diseases. He was Melvin Beeler's treating physician.

In 1972 Beeler, suffering from severe asthmatic bronchitis, was examined by Dr. Dixon and was subsequently hospitalized. Beeler told Dr. Dixon that he had been engaged in dusty work most of his life and had experienced coughing, wheezing, and shortness of breath since 1967. Dixon diagnosed Beeler's condition as "infectious bronchitis with asthmatic bronchitis and chronic obstructive lung disease and bronchitis medicamentosa." The condition was chronic and "intrinsic in nature," that is, it was engendered by no specific identifiable external cause. Dr. Dixon was of the opinion that exposure to dusts would aggravate and compound the condition.

A translation of a Russian study of the effects of zinc oxide dust in the workplace was introduced. The study noted the "highly dispersible" characteristics of the dust and concluded that zinc oxide dust has an adverse effect on the upper respiratory system.

The transcript of Dr. Howard Van Ordstrand's deposition was admitted into evidence. Dr. Van Ordstrand's *curriculum vitae* was introduced to demonstrate his experience and qualifications. Dr. Van Ordstrand was undoubtedly highly qualified in thoracic, respiratory, and pulmonary medicine. His achievements, memberships, and associations are too numerous to recount here. Dr. Van Ordstrand had studied Beeler's medical records and had examined his X rays. He had read X rays for "several large companies." Dr. Van Ordstrand expressed the opinion that Beeler suffered from episodic attacks of intrinsic bronchial asthma and that he died because of his asthmatic condition. Dr. Van Ordstrand explained that intrinsic asthma is caused by internal factors such as stress or infections; extrinsic asthma is caused by external factors such as pollen. Intrinsic asthma is characterized by periods of latency between attacks, that is, it is episodic; extrinsic asthma caused by an agent in the workplace occurs as long as the agent is present. According to Dr. Van Ordstrand, if Beeler had reported that irritants at his workplace caused his asthma and that his condition improved when he was away from the workplace, then he might have had extrinsic asthma. However, Dr. Van Ordstrand was of the opinion that, regardless of the quantity of zinc oxide dust to which Beeler had been exposed, the dust could not have been a cause of his asthma or an aggravating factor. When questioned by petitioner's counsel, Dr. Van Ordstrand acknowledged that some authorities

believe all asthma would prove to be extrinsic if only the appropriate antigens were identified. Generally speaking, extrinsic asthma is caused by known agents, whereas intrinsic asthma is caused by unknown agents.

Respondent introduced into evidence Beeler's medical records, which indicated excessive exposure to dust and allergies to pollen and dust; three medical articles addressing the effects of exposure to zinc oxide dust; and a letter from Dr. Van Ordstrand.

An arbitrator denied petitioner benefits. On the same evidence the Industrial Commission reversed, finding that Beeler had been exposed to an occupational hazard that aggravated his preexisting condition of bronchial asthma and was causally related to his death. The circuit court reversed the Industrial Commission, stating, "The Court is not qualified to say which expert has more expertise overall, but it is apparent that Dr. Van Ordstrand has superior knowledge of the effects of zinc oxide in the workplace and of occupational asthma in general." The court also noted that "the greater weight of scientific literature supports the proposition that zinc oxide dust or powder is not harmful to the employee."

■ It is the function of the Industrial Commission to resolve disputed questions of fact, including those of causal connection, to draw permissible inferences, and to decide which of conflicting medical views is to be accepted. (*Material Service Corp. v. Industrial Comm'n* (1983), 97 Ill. 2d 382, 454 N.E.2d 655.) Credibility of witnesses and causal connection are questions for the determination of the Industrial Commission, and its decision will not be set aside unless it is contrary to the manifest weight of the evidence. (*Certi-Serve, Inc. v. Industrial Comm'n* (1984), 101 Ill. 2d 236, 461 N.E.2d 954.) A reviewing court should neither overturn the Commission's findings simply because a different inference could be drawn nor otherwise substitute its judgment for that of the Commission. (*Hoegger v. Industrial Comm'n* (1987), 158 Ill. App. 3d 1025, 512 N.E.2d 110.) In this case, we think that the circuit court substituted its judgment for that of the Commission.

■ ■ Both Drs. Dixon and Van Ordstrand diagnosed Beeler's condition as intrinsic asthma. Even assuming that Beeler's condition was not caused by dust in his workplace, Dr. Dixon testified that exposure to dust would aggravate and compound Beeler's preexisting illness. A compensable injury will be found upon a showing that a preexisting illness was aggravated or accelerated by conditions in the workplace. (*Williams v. Industrial Comm'n* (1981), 85 Ill. 2d 117, 421 N.E.2d 193.) Dr. Van Ordstrand testified, however, that no amount of

zinc oxide dust or powder could have caused Beeler's asthma or aggravated his condition.

Contrary to Dr. Van Ordstrand's suppositions, Beeler's medical records indicate that Beeler had complained of dust in the workplace. Petitioner testified that her husband had been covered with dust on those occasions when he came home from work without having showered. She also testified that his condition was worse upon his return from work and improved after a night away from work. From petitioner's testimony it could be inferred that Beeler had been regularly exposed to zinc oxide dust that apparently aggravated his asthma. From Dr. Dixon's testimony, it is evident that exposure to dust would have aggravated Beeler's condition. Thus, a causal connection was established. The Commission could have inferred that the adverse effect of frequent exposure to high concentrations of dust in the air would be more pronounced in a person, such as Beeler, with a preexisting condition. The Industrial Commission could reasonably have relied upon Dr. Dixon's opinion and rejected that of Dr. Van Ordstrand.

As stated in *Board of Trustees of Southern Illinois University v. Knight* (1987), 163 Ill. App. 3d 289, 291, 516 N.E.2d 991, 993:

> "A decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in a light most favorable to the agency, the court determines that no rational trier of fact could have agreed with the agency's decision."

It appears the circuit court substituted its judgment for that of the Industrial Commission. The record shows that the decision of the Commission is not against the manifest weight of the evidence. Therefore, the judgment of the circuit court is reversed, and the decision of the Industrial Commission is reinstated.

Circuit court reversed; order of the Illinois Industrial Commission reinstated.

BARRY, P.J., and McNAMARA, WOODWARD, and McCULLOUGH, JJ., concur.