OLD BEN COAL COMPANY, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Patrick Quinn, State Treasurer and *ex officio* Custodian of the Rate Adjustment Fund, *et al.*, Appellants).

Fifth District    No. 5—93—0275WC

Opinion filed February 10, 1994.—Modified on denial of rehearing June 7, 1994.

RARICK, J., dissenting.

Harold B. Culley, Jr., of Culley & Wissore, of Raleigh, for appellant.

L. Robert Mueller of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This is an appeal by claimant Andy Bial from an order of the circuit court of Franklin County reversing the decision of the Illinois Industrial Commission (Commission) as being against the manifest weight of the evidence and reinstating the arbitrator's award. The Commission had found claimant to be permanently, totally disabled under section 8(f) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(f)) and awarded the claimant $353.19 per week for life. The arbitrator had found claimant to have a permanent partial disability to the extent of 15% and awarded claimant $264.89 per week for 75 weeks. Ill. Rev. Stat. 1989, ch. 48, par. 138.8(d).

The Commission in its decision awarding permanent total disability (PTD) benefits stated its rationale was, "In support of said modification, the Commission relies upon the medical evidence." On appeal, the only issue is whether the Commission's decision was against the manifest weight of the evidence. We affirm the order of the circuit court.

The medical evidence in this case does not support the award of PTD. Claimant was seen by two doctors at the request of his attorney. Dr. Saeed A. Khan examined claimant on March 16, 1988. Khan found claimant's pulmonary function was slightly impaired, his heart was normal, he had bronchi wheezing due to bronchitis and emphysema, dry crepitations which occur in emphysema, chronic bronchitis, and coal workers' pneumoconiosis (CWP). Khan found that the claimant was *partially* disabled due to mild, simple CWP and mild pulmonary emphysema caused by exposure to coal dust. Khan further stated that claimant should not work around coal dust.

Dr. Parviz B. Sanjabi examined claimant on May 30, 1985. The history given by claimant to Sanjabi indicated his chief complaint was shortness of breath which he experienced on exertion. Claimant said he could not walk more than three blocks on a level surface and had a problem climbing stairs. Claimant had no problem breathing when he would lie down or at night. For a person of claimant's age, the physical examination was "normal or basically normal." Sanjabi also diagnosed mild, simple coal workers' pneumoconiosis and recommended that claimant avoid further exposure to coal dust. In addition, Sanjabi said that simple coal workers' pneumoconiosis was not, in itself, disabling.

Dr. Jeff W. Selby, who examined claimant at the request of respondent, opined that claimant did not suffer from coal workers' pneumoconiosis and that he was not impaired as a result of any respiratory problem. Selby felt that claimant was in excellent cardiac and pulmonary reserve with the probable exception of deconditioning. He had no significant medical problem with the exception of developing hypertension during exercise. According to Selby, his intolerance to exercise was caused by deconditioning. However, Selby conceded that in terms of evaluating a patient via spirometry (measurement of air flow), claimant had 72% of predicted forced vital capacity. This demonstrated restrictive ventilatory defect, and coal workers' pneumoconiosis manifested itself by way of a restrictive ventilatory defect. Claimant did complain to Selby of shortness of breath.

None of the experts testified simple CWP is disabling. The medical evidence submitted does not support a finding of total disability.

Since there is no finding that claimant was obviously permanently, totally disabled and the medical evidence did not support such a finding, this court must consider whether there was sufficient evidence that claimant fit into the odd-lot category. The respondent did not offer any evidence as to the types of jobs which claimant could perform and which were available on a regular, continuous basis. Therefore, claimant would be entitled to PTD if he made a *prima facie* showing of fitting into the odd-lot category.

The employee bears the burden of proving all of the elements of his case, including the extent and permanency of the injury. It is within the province of the Commission to determine the factual issues, to decide the weight to be given to the evidence and reasonable inferences to be drawn therefrom, and to assess the credibility of witnesses. The Commission's determination of these issues will not be set aside unless it is against the manifest weight of the evidence. (*Marathon Oil Co. v. Industrial Comm'n* (1990), 203 Ill. App. 3d 809, 815-16, 561 N.E.2d 141, 146.) An employee is totally and permanently disabled under workers' compensation law when he is unable to make some contribution to industry sufficient to justify payment of wages. In order to meet his burden of proof he must show that he is, for practical purposes, unemployable.

■ In *Ceco Corp. v. Industrial Comm'n* (1983), 95 Ill. 2d 278, 286-87, 447 N.E.2d 842, 845, the Illinois Supreme Court stated:

"This court has frequently held that an employee is totally and permanently disabled when he 'is unable to make some contribution to the work force sufficient to justify the payment of wages.'

(*E.g., Gates Division, Harris-Intertype Corp. v. Industrial Com.* (1980), 78 Ill. 2d 264, 268; *Arcole Midwest Corp. v. Industrial Com.* (1980), 81 Ill. 2d 11, 15.) The claimant need not, however, be reduced to total physical incapacity before a permanent total disability award may be granted. (*Interlake, Inc. v. Industrial Com.* (1981), 86 Ill. 2d 168, 176; *Inland Robbins Construction Co. v. Industrial Com.* (1980), 78 Ill. 2d 271, 275.) Rather, a person is totally disabled when he is incapable of performing services except those for which there is no reasonably stable market. (*A.M.T.C. of Illinois, Inc., Aero Mayflower Transit Co. v. Industrial Com.* (1979), 77 Ill. 2d 482, 487.) Conversely, an employee is not entitled to total and permanent disability compensation if he is qualified for and capable of obtaining gainful employment without serious risk to his health or life. (*E.R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 362.) In determining a claimant's employment potential, his age, training, education, and experiences should be taken into account. *A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, 489; *E.R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 362."

■ In determining whether an employee may perform any useful services, "his age, training, education, and experience *must* be taken into account." (Emphasis in original.) (*Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 546, 419 N.E.2d 1159, 1163.) The *Valley Mould* court addressed the discussion of this issue in *A.M.T.C. of Illinois, Inc., Aero Mayflower Transit Co. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 397 N.E.2d 804, and stated:

"The effect of *A.M.T.C.* was not to change the definition of permanent disability *** but merely to allocate the burden of proof as between the employer and the injured employee. Under *A.M.T.C.*, if the claimant's disability is limited in nature so that he is not obviously unemployable, or if there is no medical evidence to support a claim of total disability, the burden is upon the claimant to establish the unavailability of employment to a person in his circumstances. However, once the employee has initially established that he falls in what has been termed the 'odd-lot' category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market [citation], then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant [citation]." (*Valley Mould*, 84 Ill. 2d at 546-47, 419 N.E.2d at 1163.)

Where an employee does not make out a case which shifts the burden of proof to the employer, it is incumbent upon him to show that in view of his present position, age, experience, training, and education,

he is permanently and totally disabled. This burden may be met by a showing of diligent but unsuccessful attempts to find work or by proof that because of the above-mentioned qualities he is unfit to perform any but the most menial tasks for which no stable market exists. *Valley Mould*, 84 Ill. 2d at 547, 419 N.E.2d at 1163.

Claimant retired on January 31, 1980, at the age of 64. The application for adjustment of claim was filed on January 22, 1985. At the time of the hearing before the arbitrator, claimant was 72 years old. Claimant's first regular job was in 1937 when he worked on the assembly line at the Chrysler Corporation plant in Evansville, Indiana. After being laid off in 1938, claimant got a job driving a beer truck. He did that job in 1939 and 1940. In 1940 to 1941, he worked at Hoe Supply. The nature of the job was not explained. On or about June 16, 1941, he started working for the Valier Coal Company in Valier, Illinois. He worked as a braceman and cutting machine operator. From 1942 to 1945, he served in the United States Armed Forces. When he was discharged, he went back to Valier and worked in the mine from 1946 until 1950. Respondent took over the mine, and in the fall of 1950, claimant started working for respondent. He helped put up the processing plant, and when it went into operation, he became a repairman on the midnight shift. He continued on that job until 1960 when it shut down. Claimant was then sent to Old Ben No. 21 at Sesser. He worked as a repairman and welder in the air processing plant. He continued at that job until 1967. In about October 1967, he went to Old Ben No. 26 at Sesser as a hoisting engineer. He did that job for 13 years. His last day of work was January 31, 1980. He has not worked since. Since he stopped working, his breathing problem has not worsened but remained the same.

The duties of a hoisting engineer included washing coal dust out of the employee wash house and showers and servicing the mine lights. At the hoist, he had to clean the floor and watch the machinery. When there was a heavy load, it had to be operated manually.

In *Zeigler Coal Co. v. Industrial Comm'n* (1992), 237 Ill. App. 3d 213, 604 N.E.2d 481, this court found the medical opinion that claimant should not be exposed to coal and rock dust, along with his lack of training in any other job and his physical limitations, supported a determination no reasonably stable market existed for his services. In *Zeigler Coal*, claimant testified he was no longer able to do any work, Dr. Khan testified it would be injurious for claimant to work in the coal mines or any other occupation, and Dr. Tuteur testified that claimant's health problems and weakness would prevent claimant from being gainfully employed as a coal miner and

characterized claimant's disability as total and permanent. *Zeigler Coal*, 237 Ill. App. 3d at 215-17, 604 N.E.2d at 482-84.

In *Monterey Coal Co. v. Industrial Comm'n* (1992), 241 Ill. App. 3d 386, 393, 609 N.E.2d 339, 344, medical testimony presented found claimant had CWP, and the court stated: "The record clearly demonstrates claimant is unable to perform the tasks necessary to being gainfully employed." In *Monterey Coal*, Dr. Khan opined that the claimant in that case was " 'not a suitable candidate to perform any other gainful employment.' " (*Monterey Coal*, 241 Ill. App. 3d at 389, 609 N.E.2d at 341.) This court further found that claimant's age, lack of education and training, and significant physical limitations supported the Commission's decision that there was no reasonably stable market for his services.

■ This case is distinguishable on the facts from *Zeigler Coal* and *Monterey Coal*. In this case, there is no evidence that claimant is incapable of working outside the mining industry. His level of education is not in evidence. Most of his work history has been in the mines, although he has done other work. His experience and skills developed in the mines indicate he would be qualified to work on machinery or as a maintenance person. There is no testimony in the record which refutes this conclusion.

Furthermore, there is no evidence claimant made any effort to seek employment and was denied employment because of his disability. Indeed, the inference from the testimony is that claimant was not seeking employment because of his retirement. *General Steel Industries v. Industrial Comm'n* (1971), 49 Ill. 2d 552, 276 N.E.2d 290, and *American Steel Foundries v. Industrial Comm'n* (1973), 55 Ill. 2d 538, 304 N.E.2d 604, discuss retirement in permanent disability scenarios, and not in the context of determining "odd lot." Although there should be no *per se* rule that a retired person is not entitled to PTD benefits, the fact of retirement is a factor to consider, in instances such as here where the medical evidence does not support a finding of permanent disability. The failure to seek or be available for employment is an appropriate factor where claimant is not altogether incapacitated for work. The claimant has not shown that because of his age, education, and work experience he could not be employed in any well-known branch of the labor market. Having failed to present a *prima facie* showing of odd lot, it was his burden to show diligent but unsuccessful attempts to find work. No such evidence having been presented, claimant has not made a *prima facie* showing of fitting into the odd-lot category for PTD benefits under section 8(f) of the Act.

In summary, the record is clear that claimant was not totally

physically disabled and the Commission's decision relying upon the evidence of Drs. Khan, Sanjabi, and Selby is against the manifest weight of the evidence. Additionally, claimant did not sustain his burden to recover under "odd lot," that he is so handicapped he will not be employed regularly in a well-known branch of the labor market.

For the foregoing reasons, the order of the circuit court of Franklin County, reversing the decision of the Commission and reinstating the arbitrator's award, is affirmed.

Affirmed.

RAKOWSKI, WOODWARD and SLATER, JJ., concur.

JUSTICE RARICK dissenting:

The majority concludes that the Commission's determination that the medical evidence supported an award of permanent and total disability is against the manifest weight of the evidence. Because I disagree with this conclusion, I must respectfully dissent.

In claims arising under the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1989, ch. 48, par. 172.36 *et seq.*):

"It is the function of the Commission to resolve disputed questions of fact, including those of causal connection, to decide which of conflicting medical views is to be accepted and to draw permissible inferences. [Citation.] In the presence of conflicting medical opinion, the Commission's determination is given substantial deference and will be upheld unless it is contrary to the manifest weight of the evidence. [Citation.] The Commission is the judge of the credibility of witnesses. [Citation.] It is the peculiar province of the Commission not only to determine the credibility of witnesses but also to weigh the testimony and to determine the weight to be given to the evidence. [Citations.] A reviewing court should neither overturn the Commission's findings simply because a different inference could be drawn nor otherwise substitute its judgment for that of the Commission." (*Old Ben Coal Co. v. Industrial Comm'n* (1991), 217 Ill. App. 3d 70, 83-84, 576 N.E.2d 890, 899.)

The manifest weight of the evidence is

"that which is the clearly evident, plain and indisputable weight of the evidence. In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." *Caterpillar, Inc. v. Industrial Comm'n* (1992), 228 Ill. App. 3d 288, 291, 591 N.E.2d 894, 896.

Stated differently, a decision is contrary to the manifest weight of

the evidence only when, after viewing the evidence in a light most favorable to the agency, the court determines that no rational trier of fact could have agreed with the agency's decision. *Beeler v. Industrial Comm'n* (1989), 179 Ill. App. 3d 463, 467, 534 N.E.2d 408, 411, citing *Board of Trustees of Southern Illinois University v. Knight* (1987), 163 Ill. App. 3d 289, 291, 516 N.E.2d 991, 993.

The Industrial Commission exercises original, rather than appellate, jurisdiction and is not bound by the arbitrator's findings. (*Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 483, 548 N.E.2d 1033, citing *Berry v. Industrial Comm'n* (1984), 99 Ill. 2d 401, 405, 459 N.E.2d 963; *Presson v. Industrial Comm'n* (1990), 200 Ill. App. 3d 876, 558 N.E.2d 127.) In this case, the Commission made no specific factual findings; rather, it adopted the findings of the arbitrator but attached a different legal significance thereto. The factual findings of the arbitrator and the evidence before the arbitrator must be examined to determine if such evidence and findings support the decision of the Commission. Nevertheless, it is the Commission's decision which must be focused upon, and if that decision is not against the manifest weight of the evidence, it will be upheld regardless of whether a contrary decision by the arbitrator finds support in the record. *Wagner Castings Co. v. Industrial Comm'n* (1993), 241 Ill. App. 3d 584, 609 N.E.2d 397.

The arbitrator found that the testimony of Dr. Kahn and Dr. Sanjabi clearly demonstrated that Bial had developed pneumoconiosis as a result of his occupational exposure to coal dust and that their findings and conclusions outweighed the contrary conclusions of Dr. Selby. The arbitrator further found that Bial's condition of ill-being arose out of and in the course of his employment with Old Ben.

With respect to the nature and extent of Bial's condition, the arbitrator noted Bial's uncontradicted testimony that he ceased working because his shortness of breath left him unable to adequately perform his required job duties. The arbitrator found Bial to be a candid and credible witness. Finally, the arbitrator found that the preponderance of the medical evidence established that Bial could not suffer further exposure to coal dust without endangering his health and that he was therefore disabled within the meaning of the Act. The arbitrator concluded that Bial was partially disabled to the extent of 15% of the man as a whole. The Commission, however, found that based upon such evidence, Bial was permanently and totally disabled.

Our supreme court had defined permanent and total disability as follows:

"[A] person is totally disabled when he cannot perform any ser-

vices except those for which no reasonably stable labor market exists. [Citations.] Conversely, if an employee is qualified for and capable of obtaining gainful employment without seriously endangering health or life, such employee is not totally and permanently disabled." (*E.R. Moore Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 353, 361-62, 376 N.E.2d 206, 210.)

Under *A.M.T.C. of Illinois, Inc., Aero Mayflower Transit Co. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 397 N.E.2d 804, if an employee's disability is limited in nature so that he is not obviously unemployable or if there is no medical evidence to support a claim of total disability, the burden is on the employee to establish the unavailability of employment to a person in his circumstances. If, on the other hand, the employee can establish a *prima facie* case that, although not totally incapacitated for work, he is so handicapped that he will not be employed regularly in any well-known branch of the labor market, he falls into what is termed the "odd-lot" category and the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available. If the employee cannot make a *prima facie* case that he falls into the "odd-lot" category, then the burden remains on him to establish the unavailability of employment to a person in his circumstances. He may do this in one of two ways: (1) by showing diligent but unsuccessful attempts to find work, or (2) by showing that, because of his condition, age, education, training, and experience, he is unfit to perform any but the most menial tasks for which no stable market exists. (*Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 547, 419 N.E.2d 1159, citing *Sterling Steel Casting Co. v. Industrial Comm'n* (1979), 74 Ill. 2d 273, 278, 384 N.E.2d 1326; *E.R. Moore Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 353, 361-62, 376 N.E.2d 206; *Interlake Steel Corp. v. Industrial Comm'n* (1975), 60 Ill. 2d 255, 259, 326 N.E.2d 744.) A *prima facie* case is one in which a party has brought forth sufficient evidence such that a finding in that party's favor could be supported if contrary evidence were ignored. See *Shelter Mutual Insurance Co. v. Bailey* (1987), 160 Ill. App. 3d 146, 513 N.E.2d 490; Black's Law Dictionary 1353 (4th ed. 1968).

Given the medical evidence, along with Bial's own testimony, I believe that the Commission could have properly concluded that Bial sufficiently established a *prima facie* case that he falls into the odd-lot category. Both Dr. Khan and Dr. Sanjabi testified that continued inhalation of coal dust would be injurious to Bial's health, and both recommended against further exposure. Dr. Khan explained that coal workers' pneumoconiosis is a chronic, irreversible, and incurable disease and stated that "[t]here is no cure except to remove the indi-

vidual from the coal dust." Bial testified that he had been a coal miner for most of his adult life. He was 72 years old at the time of arbitration. In my view, it reasonably can be inferred from Bial's work history that he has no other significant skills or training upon which he can draw. The majority's conclusion to the contrary is based upon the assumption that the skills Bial acquired working on mining equipment would be easily transferrable to different equipment in other fields, but there is no evidence in the record which would support this assumption. Bial is precluded by his condition from returning to work in the coal mines, his only meaningful work experience. Even without evidence of Bial's lack of education, the remaining evidence clearly demonstrates that given his work-related condition and his lack of other meaningful work experience, Bial is unable to perform the tasks necessary to be gainfully employed in any well-known branch of the labor market.

Bial has sufficiently established a *prima facie* case that he falls into the odd-lot category, and it was therefore incumbent upon Old Ben to produce evidence that some type of suitable work was regularly and continuously available. No such evidence was produced. Accordingly, I believe that the Commission's finding of total and permanent disability is not against the manifest weight of the evidence. Therefore, the circuit court improperly substituted its judgment for that of the Industrial Commission. (See *Monterey Coal Co. v. Industrial Comm'n* (1992), 241 Ill. App. 3d 386, 609 N.E.2d 339; see also *Zeigler Coal Co. v. Industrial Comm'n* (1992), 237 Ill. App. 3d 213, 604 N.E.2d 481.) For these reasons, I respectfully dissent.