(No. 40230.—

NICKEY CHEVROLET SALES, INC., Appellant, *vs.* THE INDUSTRIAL COMMISSION, *et al.*—(CAROL ANN BROESKE, Appellee.)

*Opinion filed May 18, 1967.*

PERZ AND McGUIRE, of Chicago, (ROBERT F. FERBEND and WILLIAM URUBA, of counsel,) for appellant.

WILLIAM J. CATENA and JOHN A. DOYLE, both of Chicago, for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

On May 22, 1964, the petitioner's husband, Lawrence Broeske, was struck and killed by an automobile in front of Nickey Chevrolet Sales, Inc. located on Irving Park Road in Chicago. On the date of the fatal accident Broeske was employed by Nickey as an automobile salesman. Subsequent to the death of her husband, Broeske's wife sought compensation under the Workmen's Compensation Act, contending that her husband's fatal injuries arose out of and in the course of his employment by Nickey. The arbitrator made a finding in favor of the respondent but this finding was reversed by the Industrial Commission and death benefits were awarded to the petitioner. On writ of *certiorari* the circuit court of Cook County affirmed the decision of the Industrial Commission and respondent appeals. The sole issue presented is whether the Industrial Commission was correct in finding that Broeske's death arose out of and in the course of his employment.

The dispute in this case arises not from conflicting testimony, but rather over the inferences which can be drawn from the evidence presented to the Industrial Commission. On the day of Broeske's death Nickey Chevrolet was in the business of selling automobiles, with a new and used car lot and showroom on the south side of Irving Park Road and a used car lot on the opposite side. Nickey employed some twenty salesmen including Broeske to sell these automobiles. The business hours of Nickey were from 9 A.M. to 11 P.M., with salesmen being assigned to work in seven-hour shifts. These shifts extended from 9 A.M. to

4 P.M., 3 P.M. to 10 P.M., and 4 P.M. to 11 P.M. Although the respondent did not use a time card system for its salesmen, it did supply a checkout sheet which an employee was required to sign when he arrived on the premises and when he left. It is not clear from the testimony, whether the purpose of this checkout sheet was to determine the exact hours worked by an employee or whether it was merely to indicate whether or not a salesman was within range of the public address system. During the course of their duties as salesmen Nickey's employees worked on both sides of the street, there apparently being no assigned territory on the premises for any individual salesman.

The only witness produced by Nickey was Robert Kobuck, a co-worker of the decedent, who testified that on the day in question Broeske was to work the same shift as Kobuck, from 3 P.M. to 10 P.M. There is some question, however, as to the rigidity of this schedule since Kobuck admittedly appeared on the premises at 2:30 P.M. He stated that Broeske was also present before 3 P.M. In any event, Kobuck testified that he saw the decedent sign the checkout sheet at approximately 10:02 P.M. on May 22, 1964. This checkout sheet, however, was not produced by the respondent since it, along with the other checkout sheets, was destroyed as a part of the respondent's business procedure. After Broeske signed this checkout sheet Kobuck testified that he saw him engaged in conversation with Mr. O'Brien, an assistant manager of the respondent. While this conversation was taking place Kobuck walked across Irving Park Road to where his car was parked. Some minutes after he crossed the street he heard a screeching noise and turned around to discover that Broeske had been struck by an automobile and was lying approximately in the center of Irving Park Road. Kobuck estimated that approximately ten minutes elapsed between the time he saw Broeske conversing with O'Brien and the time he heard the screeching noise. No evidence was produced by either the respondent or the

petitioner as to which direction Broeske was walking when he was hit.

The petitioner, Broeske's widow, testified that the decedent worked with a daily notebook in which he kept the names of prospective clients, and, according to his widow, he practically "lived by that." Broeske took this notebook to work with him on the day of the accident. It was not returned to the petitioner, although all of his personal effects were allegedly picked up at the scene of the accident by men employed by the respondent.

Mrs. Broeske further testified that her husband would "quite often" call on customers at a time other than his assigned working hours at Nickey and that these calls would sometimes be after the 10 P.M. or 11 P.M. shift. The petitioner did not know whether her husband was planning to see a customer on the night of the accident but, before leaving for work, he had told her he would call her about 10 P.M. to advise her of his plans. The petitioner did not receive any call from her husband on that night.

In support of the position that Broeske's death did not arise out of and in the course of his employment, respondent relies on the rule which states that accidents occurring while an employee is going to or from his place of employment are not covered by the Workmen's Compensation Act. (*Maxim's of Illinois, Inc.* v. *Industrial Com.,* 35 Ill.2d 601.) The facts in the record, however, do not compel the conclusion that the employee was not engaged in his employment at the time of the fatal accident. In support of Mrs. Broeske's testimony, Kobuck himself testified that as a salesman he would occasionally call on prospective clients at times other than his scheduled shift.

The Workmen's Compensation Act requires that in order for an accidental injury to be compensable, the injury must "arise out of" and "in the course of the employment." It is fundamental that it is within the province of the Industrial Commission, rather than the courts, to draw reason-

able conclusions and inferences from the evidentiary facts. (*Urban* v. *Industrial Com.*, 34 Ill.2d 159.) Although it may appear that there are two inferences compatible with the evidence on the question of whether or not Broeske's death arose out of and in the course of his employment, the determination of the Industrial Commission should not be disturbed unless its conclusion cannot be legitimately inferred from the evidence before it. (*Shell Oil Co.* v. *Industrial Com.*, 2 Ill.2d 590.) After a careful examination of the record we cannot say that the award of the Industrial Commission was unjustified or contrary to the manifest weight of the evidence. Positive evidence was presented which could lead to the legitimate inference that Broeske's duties as a salesman for Nickey Chevrolet were not limited to the seven-hour shift scheduled by the employer, nor were they limited to the employer's premises, and that he had not ceased work on the day of the accident. The mere fact that on the date of the accident the decedent allegedly signed a checkout sheet shortly after 10 P.M. does not convince us that decedent had finished work and was returning home at the time of his death. "It is not necessary for a claimant [seeking workmen's compensation benefits] to negate every other possible inference which may be drawn from the evidence." *Urban* v. *Industrial Com.*, 34 Ill.2d 159.

We conclude, therefore, that the finding of the Industrial Commission that Broeske's death arose from injuries sustained out of and in the course of his employment was a legitimate inference which could be drawn from the evidence. We will not disturb the decision of the Industrial Commission and, accordingly, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*