EDWARD GIBSON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Electro-Motive Division/General Motors Corporation, Appellee).

First District (Industrial Commission Division)   No. 1—87—2162WC

Opinion filed September 21, 1988.—Rehearing denied November 14, 1988.

BARRY, P.J., and CALVO, J., dissenting.

Schneider & Harman, Ltd., of Chicago (Stanford L. Lambert, of counsel), for appellant.

Pope, Ballard, Shepard & Fowle, Ltd., of Chicago (Alan C. Garrett and Sheila M. Lyons, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Edward Gibson, appeals from an order of the circuit court of Cook County confirming a decision of the Industrial Commission (Commission) denying him benefits from the respondent, General Motors Corporation.

At the hearing before the arbitrator, the following evidence was introduced. Claimant had been employed by the respondent since 1965, as a painter. On September 20, 1982, while walking down a scaffold behind a foreman, he hit the biceps of his left arm on a steel subbase door which was sticking out. He felt pain but did not notice it much at the time because he was busy checking a car. He did not report the accident at that time. A few days after it happened, he noticed it turning black and blue.

On September 21, 1982, claimant contracted the flu. He was treated by his family physician, Dr. Steven Jacula, and was off of work until October 6, 1982. After working a few days, his arm bothered him, and he could not lift anything. He went to see Dr. Mitchell, the company doctor, who told him not to worry about it, that it would go away in a few months. After about a week, he had a reoccurrence of the flu. He saw Dr. Jacula on October 1, 1982, when for the first time he mentioned the problem with his arm to Dr. Jacula. Dr. Jacula's records for that date show that claimant was given a flu shot, advised to report the medical services at work, and use a heating pad as necessary.

On October 19, 1982, claimant reported the alleged injury to the company medical department. Dr. Mitchell's report noted "a pecan-size mass on the mid-biceps muscle" and diagnosed a "resolving hematoma."

On November 19, 1982, claimant saw Dr. Edward A. Wojcik, who had previously treated a knee problem for him. After a physical exam

and X rays were taken, Dr. Wojcik's impression was that claimant's condition was "[p]robably a chronic tendinitis [sic] of the left shoulder with a rupture of the long head of the biceps tendon and subsequent distal migration of the biceps belly." He informed claimant that while no treatment was necessary for this condition, sometimes surgery was performed to bring up the muscle belly but that there was no guarantee that this would give his arm any strength. Claimant was not interested in having the surgery at that time.

On April 4, 1983, claimant went to Dr. Wojcik again, complaining of pain in the region of the muscle belly of the left biceps when he tried to lift anything heavy. The physical examination revealed "claimant has a positive impingement sign. He did seem to lack the last 10° or so of full abduction of the left arm. The muscle belly of the left biceps had moved distally because of the apparent rupture of the long head of the biceps." Again, Dr. Wojcik could not guarantee that surgery would correct the position of the muscle belly. In his April 9, 1983, report, Dr. Wojcik noted that claimant's wife, who had accompanied claimant to the examination, stated that claimant had complained of pain in his shoulder before, and claimant stated that it was arthritis. Dr. Wojcik also noted that claimant's condition "could have been aggravated by the apparent contusion which the patient sustained at work." In a May 5, 1983, telephone conversation with claimant's wife, Dr. Wojcik told her that very often the tendon can rupture without any injury when there is chronic bursitis about the shoulder.

Between October 1982 and June 1983, claimant's arm continued to bother him a great deal, and he finally could not lift anything. In June 1983, Dr. Jacula referred claimant to Dr. Boone Brackett. Claimant was admitted to West Suburban Hospital from June 14, 1983, through June 17, 1983, for surgery by Dr. Brackett to reattach the biceps muscle to the periosteum. After his release from the hospital, claimant continued to see Dr. Brackett for follow-up visits. He was released to return to work on August 15, 1983. On August 25, 1983, his last visit to Dr. Brackett, the doctor commented in his notes, "His motion is fantastic, he has good power and I think this thing is excellent! He is doing absolutely well."

On October 15, 1983, at his attorney's request, claimant was examined by Dr. Barry Fischer. According to Dr. Fischer's report, claimant complained of weakness in his left arm. He diagnosed claimant as suffering from a "strain injury to the upper left arm with rupture to the left biceps muscles." He noted "a decreased range of motion of the left upper arm at the shoulder with asymmetry of the left upper arm," and "residual atrophy of the left arm with a decreased

motor strength."

On December 16, 1983, at the request of the employer, claimant was examined by Dr. E. Thomas Marquardt. In the doctor's opinion, claimant had a full range of motion of the left shoulder and elbow. He noted the operation scar and observed that "when claimant was flexing the left elbow and tightening the biceps musculature, it could be seen that the biceps muscle belly itself is not normal in contour," and "is retracted somewhat distally." Strength of the biceps muscle to manual testing was excellent. Dr. Marquardt also pointed out that "the great majority of long head of the biceps tendon ruptures occur spontaneously." Dr. Marquardt felt claimant could work without restriction.

The arbitrator found that claimant's unrebutted testimony established that the accident occurred and that the foreman who was alleged to be present was not produced to rebut the accident. The period of disability had been stipulated to by the parties. Claimant was awarded $220 for medical expenses and $282.25 per week for 105¾ weeks for permanent and complete loss of 45% of the use of the left arm.

On review, the Commission reversed the decision of the arbitrator, basing its decision on the fact that claimant failed to report the alleged accident or seek medical care after it happened and the opinions of Drs. Wojcik and Marquardt that the tear could have developed spontaneously with that type of trauma.

The claimant appealed the decision of the Commission to the circuit court of Cook County. The circuit court determined that the decision of the Commission was not against the manifest weight of the evidence and confirmed the decision of the Commission. This appeal followed.

The single issue raised on appeal is whether the decision of the Commission is against the manifest weight of the evidence.

■■ ■ It is primarily within the province of the Commission to determine a question of fact; nevertheless, it is the duty of the reviewing court to weigh the evidence, and if the Commission's decision is against the manifest weight of the evidence, it must be set aside. (*Allis-Chalmers Manufacturing Co. v. Industrial Comm'n* (1966), 35 Ill. 2d 367.) A court will not overturn the Commission's findings simply because a different inference could be drawn or otherwise substitute its judgment for that of the Commission. (*Niles Police Department v. Industrial Comm'n* (1981), 83 Ill. 2d 528, 533-34.) Further, where the evidence is conflicting or of such a nature that different inferences may be drawn therefrom, a reviewing court will not disregard a per-

missible inference drawn by the Commission merely because other inferences may be drawn. (*Sterling Steel Casting Co. v. Industrial Comm'n* (1979), 74 Ill. 2d 273, 277.) It is for the Commission to decide which of two conflicting medical opinions given in a case is the accepted. *Caterpillar Tractor Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 35, 43.

Claimant cites *International Harvester Co. v. Industrial Comm'n* (1973), 56 Ill. 2d 84, for the proposition that an injury is accidental within the meaning of the Workers' Compensation Act when it is traceable to a definite time, place, and cause and occurs in the course of employment unexpectedly and without affirmative act or design of the employee. Claimant then argues that he has satisfied the test in that on September 20, 1982, he hit the biceps of his left arm on a steel subbase door and that this occurred unexpectedly and during the course of his employment. However, the Commission found based upon the record before it that claimant failed to prove that he had, in fact, struck his left arm as he described on September 20, 1982.

Claimant's reliance on *Board of Education v. Industrial Comm'n* (1983), 96 Ill. 2d 239, and *Nickey Chevrolet Sales, Inc. v. Industrial Comm'n* (1967), 37 Ill. 2d 399, is equally misplaced. In *Board of Education,* the issue was the existence of a causal connection between decedent's undisputed fall from a ladder and the development of his fatal brain tumor. In the present case, the existence of the accidental injury itself is disputed. We note, however, that in the above case, the Commission's resolution of the conflicts in the medical testimony was upheld. In *Nickey Chevrolet Sales,* claimant's husband, a salesman for the respondent, had been struck and killed by an automobile as he left work. The arbitrator denied benefits, but the Commission reversed and awarded benefits. The award was confirmed by the circuit court. On review, our supreme court affirmed the Commission's finding that the decedent's death arose out of and in the course of his employment, noting that it is fundamental law that it is within the province of the Commission rather than the courts to draw reasonable conclusions and inferences from the evidence and facts, nor should the determination of the Commission be disturbed unless its conclusion cannot legitimately be inferred from the evidence below it.

■ Based upon our review of the record in this case, we are satisfied that the Commission's findings were based upon facts and permissible inference from the record, and on that basis, this court may not overturn those findings or otherwise substitute our own opinion for that of the Commission. *Niles Police Department v. Industrial Comm'n* (1981), 83 Ill. 2d 528.

Therefore, we conclude that the decision of the Commission is not against the manifest weight of the evidence.

Affirmed.

McNAMARA and McCULLOUGH, JJ., concur.

PRESIDING JUSTICE BARRY, dissenting:

I must respectfully dissent.

That the petitioner's unrebutted testimony established the accident of September 20, 1982, and that the foreman was not produced to rebut the incident occurred was found by the arbitrator.

It is not contested that upon recovering from a continuing bout with the flu, on October 18, the petitioner had Dr. Jacula look at his left arm and the doctor referred him to the employer's medical department for treatment.

That the incident was reported to the employer is unquestioned. On October 19 the petitioner saw Dr. Mitchell, the employer's physician, for treatment.

That there was evidence of trauma to the petitioner's left biceps was verified by Dr. Jacula, as aforesaid, and by Dr. Mitchell, who noted "a pecan-size mass."

That there was a rupture of the long head of the left biceps was verified by Dr. Wojcik on November 19 and in 1983 by the operating surgeon, Dr. Brackett.

Dr. Brackett performed corrective surgery in June of 1983, and he felt the surgical result was a good one. Dr. Fischer, the petitioner's examining physician, found "residual atrophy and loss of use." The employer's examining physician, Dr. Marquardt, acknowledged "muscle belly not normal in contour," but nonetheless indicated that the petitioner could work without restriction. The petitioner is a left-handed painter who was employed by the respondent employer for about 20 years and may have been suffering from chronic tendonitis in his left shoulder.

The question left to be answered by my view is whether the Commission could draw its conclusions and inferences from evidence and facts in the record to reverse the arbitrator. It is worthy of note that as the trial court affirmed the Commission, the court did so while adding, "[d]espite some partially erroneous and preliminary findings by the Commission."

The Commission found that the petitioner failed to report an accident, which was contrary to the employer's doctor's report—the re-

port of Dr. Mitchell. Of more significance is the conclusion of the Commission that "[t]he tear could have developed spontaneously without any type of trauma," basing its decision upon the opinions of Drs. Wojcik and Marquardt, and that Dr. Wojcik "reported that tendon injuries *can* rupture *without* a *trauma* or injury where there is chronic bursitis of the shoulder." (Emphasis added.)

Dr. Wojcik reported:

"11-18-82     [Petitioner] said about two months ago he bumped himself in the left arm at work and it was all black and blue. He then noticed a mass in the left arm. His wife said that he has complained of pain in his shoulders before *** even before the injury. The *patient* then *said* it was his arthritis. [Emphasis added.]

P.E.     revealed that the patient seemed to have essentially a *full ROM of both shoulders,* but the biceps' belly on the left arm has slipped distally. [Emphasis added.]

X-RAYS     [s]oft tissue shadow of the biceps did appear on the x-rays of the humerous [*sic*] more distally than normal.

IMPRESSION *probably* a chronic tendonitis of the left shoulder with a rupture of the long head of the biceps tendon and subsequent distal migration of the biceps' belly. [Emphasis added.]

REC.     [I] explained to him *** that sometimes we do operate on it to bring the muscle belly up but I can't guarantee that this would give his arm more strength. He didn't seem too interested in surgery at this time."

"5-5-83     TELEPHONE CONVERSATION WITH WIFE OF ELWOOD GIBSON. The wife called complaining of my report to the Company. *** I explained to her that I put down in the report that the injury that the patient sustained at work may have aggravated this pre-existing condition. *** I simply told her that I tried to put down all that I knew about the patient. I emphasized to her that the injury I acknowledged did occur and that it could have aggravated his pre-existing condition that he had with his shoulders. I told her that very often the tendon can rupture without any

injury when there is chronic bursitis about the shoulder."

Dr. Wojcik, reporting to company's physician, Dr. Miller, on April 9, 1983.

"DIAGNOSIS: The patient probably has a chronic tendonitis of the left shoulder with a rupture of the long head of the biceps' tendon and subsequent distal migration of the biceps' belly. This condition could have been aggravated by the apparent contusion of the patient sustained at work."

Dr. Marquardt reported:

"IMPRESSION & RECOMMENDATION:

By history this gentlemen [sic] suffered a direct blow to the anterior aspect of the left upper arm. This could, in fact, have caused a rupture of the long head of the biceps tendon and/or a portion of the muscle belly itself. However, it is also important to note that the great majority of the long head of the biceps tendon ruptures occur spontaneously. *** I feel he could be working at the present time without restriction."

By my view, that the tendon can rupture without any injury is all but irrelevant given the evidence and facts here presented. And, of note is that neither Dr. Wojcik nor Dr. Marquardt testified that trauma cannot be the cause of such a rupture of the biceps. In fact, as indicated above, the examining physician for the company, Dr. Marquardt, quoted above, indicated such, that trauma could cause such a rupture of the tendon or the muscle belly itself.

Clearly the Commission had only two choices here: (1) to determine that the biceps rupture was caused by trauma; or (2) to infer, at best, from all the medical evidence that the trauma aggravated any chronic tendonitis or bursitis in the shoulder. I submit that the Commission instead based its conclusion upon false premises or presumptions, upon supposition rather than the facts in evidence clearly established. There was a trauma. It was reported, and there was testimony by both Dr. Marquardt and Dr. Fischer that the accident could or may have been the cause.

By my view the Commission's decision is tainted by error of law and does not comport with the manifest weight of evidence presented herein.

CALVO, J., joins in the dissent.