RUSSELL ROOSE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Risser Electric, Inc., Appellee).

Fourth District (Industrial Commission Division)   No. 4—88—0923WC

Opinion filed August 4, 1989.—Rehearing denied September 25, 1989.

William A. Young, of Young & Young, of Danville, for appellant.

Dukes, Martin, Helm & Ryan, Ltd., of Danville (John F. Martin, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Russell Roose, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) for injuries received in a work-related accident occurring on January 7, 1981. Claimant alleged that,

while working as a construction electrician for respondent, he was standing on approximately the third rung of a ladder when he fell and fractured both wrists. The eventual result of the accident was bilateral carpal tunnel syndrome (syndrome).

On July 16, 1984, the matter was heard before an arbitrator, who decided that claimant, because of the injury, was permanently and totally disabled. In its decision and opinion on review issued on September 12, 1986, the Industrial Commission (Commission) found that a causal relationship existed between the injuries and claimant's syndrome; that claimant was intermittently temporarily totally disabled for $162\frac{2}{7}$ weeks; and that claimant's condition had not yet reached a state of permanency.

On appeal the circuit court of Vermilion County found that the Commission's decision holding claimant's syndrome was related to the January 7, 1981, injury was contrary to the manifest weight of the evidence. The cause was remanded to the Commission for it to determine what temporary total compensation, permanent total disability, and medical bills, if any, claimant had sustained without consideration of the syndrome.

On remand review, the Commission found, without giving consideration to the syndrome, that claimant had sustained permanent partial disability of 25% loss of the use of his left hand and 35% loss of the use of his right hand. It also modified the award of temporary total disability to $12\frac{4}{7}$ weeks. The circuit court confirmed this award. This appeal followed.

On appeal, claimant raises one issue, namely, whether the circuit court erred when it held that the Commission's finding of a causal connection between the industrial accident and the syndrome was against the manifest weight of the evidence.

The following facts are pertinent to our disposition of this appeal. Claimant testified that he was a construction electrician who was employed by respondent on January 7, 1981. On that date, he was climbing a ladder sideways and carrying some tools when he missed a rung and fell, hitting both hands on the tile floor below. Dr. Adeli and Dr. Heatherington treated claimant for his injuries. Dr. Adeli diagnosed a comminuted (crushed into small pieces) fracture of the distal radius, including the distal third "radius [*sic*]," with dorsal angulation of distal fragments of the left wrist and a comminuted Colles fracture of the right wrist. Dr. Adeli performed a closed reduction and applied short arm Cutter casts to both arms. On January 22, 1981, Dr. Adeli performed another reduction of the right wrist fracture.

Dr. Heatherington saw claimant five times from March 2 to December 18, 1981, and Dr. Adeli saw him seven times from January 30 to November 11, 1981. On March 25, 1981, when Dr. Adeli released him to return to work as of April 6, 1981, claimant still complained of wrist pain and limitation of wrist motion.

Claimant testified that he returned to his regular work duties on April 6, 1981, and was laid off in January 1982. He was called back to work on March 1, 1982, but on April 16, 1982, he ceased working due to severe pain in both wrists and forearms. At this time, Dr. Heatherington referred him to Dr. Steichen, an Indianapolis-based specialist in the treatment of hands.

Dr. Steichen first examined claimant on April 26, 1982, and found some limitation of flexion and extension of both wrists and signs of the syndrome. He placed both wrists in immobilization splints. When the symptoms were not relieved by the splints, Dr. Steichen performed a bilateral carpal tunnel release with external neurolysis of the median nerve on August 20, 1982. On November 10, 1982, claimant informed Dr. Steichen that the carpal tunnel release had relieved his forearm pain but that the pain in his wrists was so severe that he had to wear his wrist splints continuously. After a trial period with a TNS unit, Dr. Steichen referred claimant to Dr. Manders of the Community Hospital Pain Center, where claimant would learn to deal with his pain. Claimant stated that he completed a four-week program at the pain center.

On March 21, 1983, Dr. Manders diagnosed claimant's condition as a post-traumatic pain syndrome. On July 13, 1983, he reported that claimant had done well at the pain center and that with continuation of the program at home, and with close follow up, he believed claimant would, in time, be able to obtain some type of gainful work. Dr. Manders indicated that a change in vocation might be necessary.

On December 8, 1983, Dr. Steichen said claimant would never be able to return to work on a full-time basis as a laborer or any other position which required the use of the hands and wrists.

On July 19,1984, Dr. Heatherington reported that the manipulation of claimant's wrists during examination caused severe pain for several days.

At arbitration, claimant stated that he either wears his wrist splints or TNS unit each day, sees Dr. Heatherington regularly, and takes Emperin III for his wrist pain. He stated that he is only able to perform menial household chores, and he is unable to hold up a newspaper while reading it. Claimant testified that he participated

in a bowling league, which began in September 1981, but eventually dropped out of it.

On review, the respondent submitted Dr. Adeli's report of his February 25, 1985, examination of claimant. Dr. Adeli reported that claimant was wearing custom-made fiberglass splints over each wrist, which were removed during examination. Dr. Adeli found very few orthopedic problems, and he believed that claimant's physician should be consulted for an evaluation. Dr. Adeli felt that claimant should gradually begin to perform light work within his physical limits.

After reviewing claimant's upper extremities (with the wrist splints removed) at oral argument on June 24, 1985, the Commission ordered an impartial physical examination by a physician selected by the Illinois State Medical Society, as authorized by section 19(c)(1) of the Act. (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(c)(1).) The medical society selected Dr. Peterson, whose report of his August 28, 1985, examination of claimant was admitted into evidence.

Dr. Peterson noted that claimant wore bilateral wrist splints. He found good grip strength and equal reflexes bilaterally, normal dorsiflexion bilaterally, and no significant loss of sensation in the fingers or thumbs bilaterally. Volar flexion was to 45° on the right and to 30° on the left, and supination was to 45° on the right and to 60° on the left. After viewing X rays, Dr. Peterson's impression was a malunion of Colles' fracture, right wrist, with radial deviation, a mild to minimal malunion of the left distal radius shaft fracture, and secondary osteoarthritis of the right radial carpal joint. His opinion (subsequently adopted by the Commission) was that claimant had from 15% to 20% permanent impairment in the right upper extremity due to the symptomatic radiocarpal arthritis, apparently due to the malunion of the fracture, from 10% to 15% impairment of the left upper extremity due to the slight malunion, and slight radial angulation of the distal radius.

In its decision and opinion on review, the Commission noted that claimant's complaints of continuous wrist pain since his injury of January 7, 1981, are well documented in the reports of his treating and examining physicians. The Commission found that a causal relationship existed between his injuries of January 7, 1981, and the syndrome.

In this appeal, claimant argues that even after he had returned to work after April 6, 1981, the record shows that he continued to have problems with his wrists, including severe pain, swelling, and some limitation of motion. Claimant points out that there is no evi-

dence of an injury prior to or subsequent to the one occurring on January 7, 1981. Moreover, claimant contends that not even a scintilla of evidence indicated that the syndrome and resulting disability arose from any cause other than the work-related accident. Claimant asserts that, given the fact that there was no evidence of any other cause for the presence of continued pain, the Commission was entitled to infer from said evidence that the syndrome was related to the original injury.

In response, respondent argues that the syndrome was not diagnosed until a year and a half after the accident in which claimant fractured his wrists. Respondent contends that the remoteness of the diagnosis of the syndrome raises strong questions as to whether there is any connection between the injury and the syndrome. Moreover, respondent asserts that there is no medical opinion, within a reasonable degree of medical certainty, that the syndrome was or could have been related to the fall at work. Respondent emphasizes that claimant recovered from his injury and returned to work; that Dr. Steichen in a report dated May 7, 1982, stated that he saw no evidence of carpal involvement; that claimant once golfed 18 holes in the summer of 1981 and bowled in a league which commenced in September 1981; and that he performed some chores at home. Respondent further argues that there are other plausible explanations for the cause of claimant's syndrome.

■■ ■ Initially, we observe it is axiomatic that a reviewing court will not reverse the Commission's decision unless it is against the manifest weight of the evidence. (*Jacobson v. Industrial Comm'n* (1981), 84 Ill. 2d 153.) It is the Commission's function to determine if a causal relationship existed between claimant's employment and his injury, and its judgment will not be disturbed except where it is contrary to the manifest weight of the evidence. (*Interlake, Inc. v. Industrial Comm'n* (1981), 86 Ill. 2d 168, 175.) Specifically, it is the province of the Commission to weigh the evidence in workers' compensation proceedings and draw all reasonable inferences therefrom, and the reviewing court will not overturn its findings simply because a different inference could be drawn. *Niles Police Department v. Industrial Comm'n* (1981), 83 Ill. 2d 528.

■■ From the evidence adduced in this case, we find the Commission could reasonably infer that the condition of claimant's wrists was related to the January 7, 1981, injury. Claimant testified that he was never pain free, and the motion of his wrists was limited following his injury. He testified that his nonwork activities were limited and that he began a bowling league in September 1981 but

eventually could not continue to do so. In April 1982, claimant stated that he stopped working due to severe pain in his wrists and forearms.

In late April 1982, Dr. Steichen placed both wrists in immobilization splints, which proved ineffective. On August 20, 1982, Dr. Steichen performed a bilateral carpal tunnel release with external neurolysis of the median nerve. This procedure did not alleviate claimant's symptoms.

There is no evidence of an intervening accident or activity which caused claimant's syndrome, nor is there evidence that claimant ever fully recovered from the January 7, 1981, injury. The Commission correctly noted that claimant's complaints of continuous wrist pain following the injury were well documented in treating and examining physicians' reports. Respondent asserts that there are other plausible explanations as to why claimant developed the syndrome in both wrists but then does not offer any alternative explanations. Moreover, there is no evidence that claimant had any wrist problems prior to the instant injury, a fact which bolsters the Commission's reasonable inference that the syndrome was a result of the January 7, 1981, accident.

Based on the foregoing evidence, we find that the Commission's award of temporary total disability was not against the manifest weight of the evidence. Accordingly, we reverse the judgment of the circuit court of Vermilion County and reinstate the Commission's September 12, 1986, opinion and decision on review and remand this case to the Commission to undertake such further proceedings and to enter such further orders as necessary to conform with this opinion.

Reversed and remanded with directions.

BARRY, P.J., and McNAMARA, McCULLOUGH, and LEWIS, JJ., concur.