PEABODY COAL COMPANY, Appellant, v. THE INDUSTRIAL COMMIS-SION *et al.* (John J. Darnell, Ex'r of the Estate of Roy E. Darnell, Appel-lee).

Fifth District (Industrial Commission Division) No. 5—92—0297WC

Opinion filed January 19, 1994.

Kevin M. Hazlett, of Keefe & De Pauli, P.C., of Fairview Heights, for appellant.

Robert C. Nelson, of Nelson, Bement, Stubblefield & Rich, of Belleville, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Roy E. Darnell, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) for injuries allegedly stemming from an accident on January 13, 1986, while in the employ of Peabody Coal Company (Peabody). The arbitrator awarded claimant compensation for temporary total disability for a period of 60⁵/₇ weeks and 60% permanent loss of the use of his left arm. On appeal, the Industrial Commission (Commission) modified the award of temporary total disability to a period of 38⁶/₇ weeks. The circuit court of St. Clair County confirmed the decision of the Commission. Peabody appeals arguing the Commission's decision is contrary to the manifest weight of the evidence. Peabody also raises the issue of whether an award for benefits survives when there are no dependents.

Claimant worked for Peabody for 20 years as a diesel mechanic. On January 13, 1986, claimant stepped off a ladder, turned to walk away, and tripped over a draw bar on the floor. He fell forward with his arms outstretched and elbows locked. All of the impact was felt in his left arm and shoulder. Prior to this fall, claimant testified he had had no difficulty with his left shoulder and had had no prior workers' compensation claims of any kind. The next day, claimant went to see his family physician for treatment. Physical therapy was prescribed. When claimant experienced little relief, he went to see a chiropractor, Dr. Benedict. Dr. Benedict's records indicate claimant was suffering from a sharp pain in his upper left arm near the deltoid insertion. Dr. Benedict believed claimant had an inflammatory condition in the subacromial area, probably bursitis, as a result of the fall. Claimant's last visit with Dr. Benedict occurred in May of 1986 at which point claimant was experiencing less intense pain and some slight increase in freedom of movement. He also experienced grinding, however, when-

ever he moved his shoulder. Although claimant continued to work, he was not able to do his usual jobs. Co-workers often had to assist him, especially when the job required anything physical over his head.

Eventually claimant returned to Dr. Benedict in August 1987 complaining that he could not lift either arm above his head. Dr. Benedict referred claimant to an orthopedic surgeon, Dr. Simmons. Dr. Simmons performed three surgeries to claimant's shoulders in February, April, and July of 1988. Some confusion exists in Dr. Simmons' notes as to which shoulder was hurt at work and for how long. While two entries state injuries to the left shoulder were work related, one entry indicates no record of any injury.

Dr. Marshall Conrad, an orthopedic surgeon, examined claimant in January 1989. After reviewing the medical records and examining claimant, Dr. Conrad opined claimant's original injury was a torn rotator cuff stemming from the fall in January of 1986. Dr. Conrad stated that neither the lack of treatment nor the type of treatment received was a significant factor. He felt that most of the time this type of injury is treated conservatively because many do not recognize the exact nature and extent of the injury, and "[t]he tendency is to put up with the thing until it gets well by itself." Dr. Conrad also commented that the most common cause of such a tear is a fall on an outstretched hand trying to catch one's self.

Peabody had claimant examined by orthopedic surgeon Dr. Costen. Dr. Costen ultimately agreed with all other treating and examining physicians as to causation. Dr. Costen, relying upon the confusing notes of Dr. Simmons, commented that it was reasonable claimant had some impairment of both his shoulders prior to his fall in January of 1986. He also admitted, however, the fall probably caused the left shoulder "to tear his rotator cuff more and stiffen."

Claimant retired from Peabody in February 1989. He subsequently died on or about September 3, 1991, some 2½ months prior to the issuance of the Commission's full decision. The Commission ultimately found a causal connection between claimant's work-related injury and his condition of ill-being and awarded him benefits.

■ Peabody argues the Commission's decision as confirmed by the circuit court is against the manifest weight of the evidence. We disagree. It is well settled that it is the function of the Commission to determine whether there is a causal connection between a claimant's injuries and his employment. (*Darling v. Industrial Comm'n* (1988), 176 Ill. App. 3d 186, 192, 530 N.E.2d 1135, 1140; *Caterpillar Tractor Co. v. Industrial Comm'n* (1984), 124 Ill. App. 3d 650, 653, 464 N.E.2d 1097, 1099.) It is also well settled that it is the function of the

Commission to determine questions of fact and causation, to judge the credibility of witnesses, and to resolve conflicting medical evidence. (*Caterpillar, Inc. v. Industrial Comm'n* (1992), 228 Ill. App. 3d 288, 291, 591 N.E.2d 894, 896.) More importantly, findings of the Commission will not be reversed on appeal unless they are against the manifest weight of the evidence. (*O'Dette v. Industrial Comm'n* (1980), 79 Ill. 2d 249, 253, 403 N.E.2d 221, 223-24; *Shell Oil Co. v. Industrial Comm'n* (1954), 2 Ill. 2d 590, 600, 119 N.E.2d 224, 230.) And, in order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. (*Caterpillar, Inc.*, 228 Ill. App. 3d at 291, 591 N.E.2d at 896.) No opposite conclusion is clearly apparent here. In fact, given that all physicians questioned on the issue of causation opined claimant's condition of ill-being was work related, we have no alternative but to affirm the Commission's decision.

Claimant testified at the hearing before the arbitrator that he had had no prior history of trouble with his left shoulder before his fall in January of 1986. After the fall, however, he suffered from intense pain and restricted movement. Although he continued to work and stopped most medical treatments, he was not able to perform his job as he had prior to the fall. He no longer could do anything which required movement above his head and had to ask others to cover for him. Peabody presented no evidence to the contrary. Eventually, claimant's condition required surgery, at which time a tear in the rotator cuff finally was diagnosed. No other evidence of accidents or injuries precipitating such a result was presented. In fact, Dr. Conrad testified the type of fall claimant experienced in January of 1986 typically results in such injuries. And, just as typically, the injured person copes with the pain and loss of movement believing it eventually will go away. Clearly claimant established a causal connection between his injury and his employment. (See *International Harvester Co. v. Industrial Comm'n* (1970), 46 Ill. 2d 238, 244-46, 263 N.E.2d 49, 53-54; *Darling*, 176 Ill. App. 3d at 193, 530 N.E.2d at 1140-41.) As every injury sustained in the course of an employee's employment which causes a loss to that employee is compensable (see *Shell Oil*, 2 Ill. 2d at 596, 119 N.E.2d at 228), the Commission rightfully awarded claimant benefits.

Peabody contends that even if we affirm the Commission's decision, there still exists a question as to whether the benefits awarded survive if claimant has no dependents. Claimant's estate counters that any possible dependency issue has been waived.

As previously mentioned, claimant passed away in September 1991. The decision of the arbitrator was entered on January 5, 1990, and the predecision of the Commission was entered on March 14, 1991. The Commission's full decision, however, was not rendered until November 22, 1991, after claimant's death. In December of 1991, Peabody appealed the Commission's decision to the circuit court of St. Clair County. On January 4, 1992, claimant filed an answer and a motion to substitute the proper party defendant. The letter accompanying claimant's answer and motion stated that copies had been mailed to Peabody and Peabody's counsel. The motion for substitution was granted the same day. The circuit court confirmed the Commission's decision on April 6, 1992. Peabody claims it never received a copy of the answer, the motion, or the order granting the motion and did not discover such documents until it obtained a copy of the transcript from the circuit court in preparation for its brief to the appellate court. As a result, no hearing on the issue of dependency was ever held. There is no affidavit, allegation, or indication on record, however, that claimant died without dependents. In fact, the record suggests otherwise.

Although all amounts were due and owing prior to claimant's death, there remains a question as to whom the award should be paid now that claimant is deceased. We therefore remand this issue to the Commission for further proceedings.

For the aforementioned reasons, we affirm the judgment of the circuit court of St. Clair County confirming the decision of the Industrial Commission, but we remand to the Commission for a determination of dependency.

Affirmed and remanded.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD, and STOUDER, JJ., concur.