FREEMAN UNITED COAL MINING COMPANY, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Alexi Giannoulias, State Treasurer and *ex officio* Custodian of the Rate Adjustment Fund, *et al.*, Appellees).—ARTIS VAN HOUTEN, Widow of Kenneth Van Houten, Deceased, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMIS-SION *et al.* (Alexi Giannoulias, State Treasurer and *ex officio* Custodian of the Rate Adjustment Fund, *et al.*, Appellees).

Fourth District (Illinois Workers' Compensation Commission Division)
Nos. 4—07—0905WC, 4—07—0907WC cons.

Argued September 9, 2008.—Opinion filed September 29, 2008.

Julie A. Webb and Kenneth F. Werts (argued), both of Craig & Craig, of Mt. Vernon, for Freeman United Coal Mining Company.

Harold B. Culley, Jr., and Bruce R. Wissore (argued), both of Culley & Wissore, of Raleigh, for Artis Van Houten.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On March 10, 2000, decedent, Kenneth Van Houten, filed an application for adjustment of claim pursuant to the Workers' Oc-

cupational Diseases Act (820 ILCS 310/1 through 27 (West 1998)), seeking benefits from employer, Freeman United Coal Mining Company (case No. 00—WC—13541). Decedent died on May 19, 2000. On August 2, 2000, claimant, Artis Van Houten, the surviving spouse of decedent, filed an application for adjustment of claim pursuant to the Act, seeking benefits from employer (case No. 00—WC—41977). Following a consolidated hearing ("The living miner's claim has been decided simultaneously with this claim arising from his subsequent death. *Kenneth Van Houten v. Freeman United Coal Mining Company*, [No.] 00[—]WC[—]13541"), an arbitrator issued a decision in which he found "[d]ecedent's nearly 38 years of coal[-]mining exposure resulted in an occupational disease which was a causative factor in his death." The arbitrator awarded claimant benefits under section 7 of the Act (820 ILCS 310/7 (West 2000)) and ordered employer to pay claimant $4,200 for decedent's funeral expenses (case No. 00—WC—41977). The arbitrator did not award benefits in case No. 00—WC—13541.

Both parties sought a review of the arbitrator's decision before the Industrial Commission (Commission).[1] In separate decisions (case Nos. 071—WCC—0417 and 071—WCC—0418), the Commission affirmed and adopted the arbitrator's decision. The Commission stated in case No. 071—WCC—0417 that "the living miner's claim abates at the death of a miner."

Thereafter, claimant sought a judicial review of the Commission's decision in case No. 071—WCC—0417, and employer sought a judicial review of the Commission's decision in case No. 071—WCC—0418, in the circuit court of Sangamon County. The circuit court confirmed the Commission's decisions.

Employer appeals (No. 4—07—0905WC), arguing that (1) the Commission's finding that decedent suffered an occupational disease is against the manifest weight of the evidence, (2) the Commission's finding that decedent suffered a disability which was causally related to his occupational disease is against the manifest weight of the evidence, (3) the Commission's finding that claimant proved decedent suffered disablement within two years after the last day of the last exposure to the hazards of the occupational disease is against the manifest weight of the evidence, (4) the Commission's finding of a causal connection between the decedent's death and any occupational disease is against the manifest weight of the evidence, and (5) the arbitrator abused his discretion in granting claimant's motion to reopen proofs. We affirm.

---

[1]Now known as the Illinois Workers' Compensation Commission. See Pub. Act 93—721, eff. January 1, 2005.

Claimant appeals (No. 4—07—0907WC), arguing that the Commission's finding that "the living miner's claim abates at the death of a miner" is contrary to law. We reverse and remand with directions.

The parties are familiar with the evidence presented and, therefore, we will discuss it only to the extent necessary to put their arguments in context.

The 61-year-old decedent worked as a coal miner for approximately 38 years, during which time he was exposed to coal dust. He last mined coal on February 2, 1998. On March 10, 2000, decedent filed an application for adjustment of claim pursuant to the Act seeking benefits from employer (miner's claim). Decedent died on May 19, 2000. On August 2, 2000, claimant filed an application for adjustment of claim pursuant to the Act, seeking benefits from employer (widow's claim).

Following the consolidated hearing, the arbitrator issued a decision in which he found Drs. Lesch and Renn not credible medical witnesses. The arbitrator found (1) the more credible evidence indicated that "decedent's occupational lung disease would have been a contributing factor in his fatal heart attack," and (2) claimant entitled to the benefit of the presumptions set forth in section 1(d) of the Act (820 ILCS 310/1(d) (West 2000)) by reason of the decedent's 38 years of work in coal mines. The arbitrator concluded that "[d]ecedent's nearly 38 years of coal[-]mining exposure resulted in an occupational disease which was a causative factor in his death" and awarded claimant benefits under section 7 of the Act (820 ILCS 310/7 (West 2000)) and ordered employer to pay claimant $4,200 for decedent's funeral expenses. The arbitrator did not award benefits in the miner's claim.

Both parties sought a review of the arbitrator's decision before the Commission. In separate decisions, the Commission affirmed and adopted the arbitrator's decision. The Commission stated in case No. 071—WCC—0417 that "the living miner's claim abates at the death of a miner."

Thereafter, claimant sought a judicial review of the Commission's decision in case No. 071—WCC—0417, and employer sought a judicial review of the Commission's decision in case No. 071—WCC—0418, in the circuit court of Sangamon County. The circuit court confirmed the Commission's decisions.

Employer (No. 4—07—0905WC) and claimant (No. 4—07—0907WC) appealed, and we consolidated the appeals.

■ Employer first argues that the Commission's finding that decedent suffered an occupational disease is against the manifest weight of the evidence. We disagree.

"[I]t is the province of the *** Commission to weigh the evidence

and draw reasonable inferences therefrom in the first instance, and we will not overturn its findings simply because a different inference could be drawn." *Niles Police Department v. Industrial Comm'n*, 83 Ill. 2d 528, 533-34, 416 N.E.2d 243, 245 (1981). Interpretation of medical testimony is particularly within the province of the Commission. *A.O. Smith Corp. v. Industrial Comm'n*, 51 Ill. 2d 533, 536-37, 283 N.E.2d 875, 877 (1972). "Before a reviewing court may overturn a decision of the *** Commission, it must find that the award was contrary to law or that the Commission's factual determinations were against the manifest weight of the evidence." *Freeman United Coal Mining Co. v. Industrial Comm'n*, 188 Ill. 2d 243, 245, 720 N.E.2d 1063, 1065 (1999).

In this case, the Commission affirmed and adopted the arbitrator's decision. The arbitrator noted Dr. Jeffrey Liang's testimony that decedent suffered chronic lung disease in the form of hypoxemia. Dr. Liang opined that decedent's mine-dust exposure would have been a causative factor in his condition. Dr. William Houser testified that decedent suffered from CWP (coal workers pneumoconiosis) and that decedent's CWP was causally related to his exposure to coal dust. Dr. Houser based his opinion on occupational exposure of approximately 38 years and chest X-rays indicating a category 1/0 CWP. Decedent also suffered from COPD (chronic obstructive pulmonary disease) and chronic bronchitis, secondary to smoking and coal- and rock-dust exposure. Dr. Houser concluded that decedent suffered from a permanent impairment of function that made him unable to perform heavy manual labor and left him disabled from mining because any additional dust exposure would have aggravated decedent's condition. Dr. Houser's opinion was in accord with the statutory presumption found in the Act. See 820 ILCS 310/1(d) (West 2000). Dr. Thomas Cahill testified that decedent had significant coal-mine dust and tobacco exposures, long-standing heart disease, and lung disease consisting of COPD, chronic bronchitis, and CWP. Although Dr. Joseph Renn opined that decedent's autopsy ruled out CWP, and he did not believe decedent had chronic hypoxemia, the Commission found Dr. Renn "acted more as an advocate than an impartial witness." Based on the record before us, the Commission's finding that decedent suffered an occupational disease is not against the manifest weight of the evidence.

■ Employer next argues that the Commission's finding that claimant proved decedent suffered disablement within two years after the last day of the last exposure to the hazards of the occupational disease is against the manifest weight of the evidence. See 820 ILCS 310/1(f) (West 2000). Whether a claimant has provided sufficient evidence of disablement is a question of fact for the Commission, and its decision

in this regard will not be reversed unless it is against the manifest weight of the evidence. *Freeman United Coal Mining Co. v. Industrial Comm'n*, 263 Ill. App. 3d 478, 486, 636 N.E.2d 77, 82 (1994).

Decedent was last exposed to coal-mine dust on February 2, 1998, and died on May 19, 2000. The death certificate found the immediate cause of death to be an acute "myocardio" infarction secondary to atherosclerosis and emphysema. The autopsy found that the emphysema was present in all lobes. Dr. Liang's records state that decedent's symptoms caused him to quit working on February 2, 1998. Decedent needed oxygen when ambulating and had a moderate impairment which limited him to sedentary activity. A pulmonary-function report of March 11, 1998, found a moderate obstructive defect. Hypoxemia and COPD were diagnosed on March 17, 1998. In multiple entries dated April 13, 1998, through June 10, 1999, the medical records show claimant diagnosed with COPD, experiencing shortness of breath, and diminished breath sounds.

In addition, when Dr. Liang began treatment in 1997, decedent already had long-standing COPD. Decedent used oxygen since March 1998. Dr. Houser examined decedent in April 2000 and concluded that decedent suffered from (1) CWP caused by exposure to coal and rock dust and (2) COPD and chronic bronchitis caused in part by exposure to coal and rock dust. He concluded that decedent was disabled from mining. The evidence supports the Commission's conclusion that decedent's disablement occurred within the statutory two-year period.

■ Employer next argues that the Commission's finding of a causal connection between the decedent's death and any occupational disease is against the manifest weight of the evidence. The issue of whether a causal relationship exists between a claimant's employment and his injury is a question of fact to be determined by the Commission. *Certi-Serve, Inc. v. Industrial Comm'n*, 101 Ill. 2d 236, 244, 461 N.E.2d 954, 958 (1984). Death is compensable under the Act so long as the decedent's employment was a causative factor. His employment need not be the sole cause or even the primary cause; it is sufficient if it is a cause. *Sears, Roebuck & Co. v. Industrial Comm'n*, 79 Ill. 2d 59, 66, 402 N.E.2d 231, 235 (1980).

The Commission's determination on a question of fact will not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44, 509 N.E.2d 1005, 1007 (1987). Whether we might reach the same conclusion is not the test of whether the Commission's determination of a question of fact is against the manifest weight of the evidence. The appropriate test is whether there is sufficient evidence in the record to support the Commission's finding. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450, 440 N.E.2d 90, 93 (1982).

The testimony of Drs. Liang, Houser, and Cahill supports the finding that decedent suffered from CWP, chronic bronchitis, emphysema, and COPD. Dr. Liang testified that decedent's lung disease and chronic hypoxia could affect the outcome of his infarction. He opined that decedent's heart attack could have been aggravated by his lung disease. When asked if decedent's fatal heart attack was caused by his long-standing lung disease, Dr. Liang testified, "He already had a heart problem. I think that's *** like I mentioned, this lung, chronic lung disease was hypoxia and definitely will worsen the heart situation." Dr. Houser concluded that decedent's occupationally related lung disease, including emphysema, were causative factors in his death. He explained: "His lungs were failing to the point that he needed supplemental oxygen to provide adequate oxygenation." Dr. Cahill also stated that decedent's low oxygen level could precipitate lethal arrhythmia. He also observed that on autopsy there was no finding of any occluded or blocked vessel.

Without question, the Commission had before it conflicting medical opinions on the issue of causation. The Commission affirmed and adopted the arbitrator's decision. The arbitrator rejected Drs. Lesch's and Renn's opinions. It is the function of the Commission to judge the credibility of witnesses and resolve conflicting evidence; its determination will not be disturbed on review unless contrary to the manifest weight of the evidence. *Freeman United Coal Mining Co. v. Industrial Comm'n*, 317 Ill. App. 3d 497, 505, 739 N.E.2d 1009, 1015 (2000). Additionally, claimant is entitled to the benefit of the presumptions set forth in section 1(d) of the Act by reason of the decedent's 38 years of work in coal mines. The Commission's decision that decedent suffered from an occupational disease which was causally related to his death is not against the manifest weight of the evidence.

■ Employer next argues that the arbitrator abused his discretion in granting claimant's motion to reopen proofs. Following arbitration, claimant filed a motion to reopen proofs to file an affidavit of Dr. Cahill for the purpose of clarifying his deposition testimony. In the affidavit, Dr. Cahill stated that page 20 of his deposition contained an error that conflicted with his report. In his deposition, Dr. Cahill stated that decedent's chronic lung disease and hypoxemia were not causative factors in his death. In his report, Dr. Cahill stated that hypoxemia can trigger lethal arrhythmias. His report states that he did "feel that his pre[ ]existing lung disease was a considering factor to his demise." Claimant moved to reopen proofs so that Dr. Cahill's affidavit could properly be considered by the arbitrator and the arbitrator granted claimant's motion.

The decision whether to grant a motion to reopen proofs lies

within the arbitrator's discretion and will not be disturbed on appeal absent an abuse of discretion. See *Chicago Transparent Products, Inc. v. American National Bank & Trust Co. of Chicago*, 337 Ill. App. 3d 931, 942, 788 N.E.2d 23, 32 (2002).

Employer argues that claimant acted in violation of Supreme Court Rule 207 (166 Ill. 2d R. 207). Rule 207 sets forth the procedure for a deponent to examine a deposition and make changes the deponent desires to make. In this case, Dr. Cahill did not seek to make changes to his deposition pursuant to Rule 207. Claimant moved to reopen proofs so that Dr. Cahill's affidavit could properly be considered by the arbitrator and the arbitrator granted claimant's motion. Moreover, the arbitrator's decision makes no reference to the affidavit or Dr. Cahill's conclusions regarding causal connection and the decision was supported by other testimony in the record on causal connection. The arbitrator did not abuse his discretion in granting claimant's motion to reopen proofs.

■ Claimant argues that the Commission's finding that decedent's claim abated by virtue of section 8(h) of the Workers' Compensation Act (Compensation Act) is legal error. Section 8(h) provides:

> "In case death occurs from any cause before the total compensation to which the employee would have been entitled has been paid, then in case the employee leaves any widow, widower, child, parent (or any grandchild, grandparent or other lineal heir or any collateral heir dependent at the time of the accident upon the earnings of the employee to the extent of 50% or more of total dependency) such compensation shall be paid to the beneficiaries of the deceased employee and distributed as provided in paragraph (g) of [s]ection 7." 820 ILCS 305/8(h) (West 2000).

As this issue is one of statutory construction, our review is *de novo*. *Sun Choi v. Industrial Comm'n*, 182 Ill. 2d 387, 392, 695 N.E.2d 862, 865 (1998). Our goal is to ascertain and give effect to the intent of the legislature (*Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990)), the best indication of which is the language of the statute, given its plain and ordinary meaning (*Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479, 639 N.E.2d 1282, 1287 (1994)).

This court in *Electro-Motive Division v. Industrial Comm'n*, 250 Ill. App. 3d 432, 438, 621 N.E.2d 145, 149 (1993), found section 8(h) of the Compensation Act "clear and unambiguous." Section 8(h) provides that benefits to which the employee would have been entitled but for his death are to be paid to the employee's survivors upon his death from any cause. 820 ILCS 305/8(h) (West 2000). In *Electro-Motive*, benefits included 150 weeks of permanent partial disability (PPD) benefits. The Commission awarded attorney fees and penalties for

employer's delay of unpaid PPD payments and rejected its argument that liability terminated with the employee's death. This court found the imposition of penalties and attorney fees warranted, concluding that "[d]ecedent would have been entitled to the remaining weeks of PPD had he not died, assuming nothing else had occurred to change the status of the disability." *Electro-Motive*, 250 Ill. App. 3d at 438, 621 N.E.2d at 149.

In *Nationwide Bank & Office Management v. Industrial Comm'n*, 361 Ill. App. 3d 207, 213, 836 N.E.2d 120, 125 (2005), this court reinstated the Commission's decision which denied an employer's motion to dismiss based on abatement. This court held that section 8(h) of the Compensation Act did not change prior law awarding all benefits accrued at the time of death. *Nationwide*, 361 Ill. App. 3d at 211, 836 N.E.2d at 123-24; see also *Peabody Coal Co. v. Industrial Comm'n*, 255 Ill. App. 3d 828, 832, 627 N.E.2d 720, 723 (1994) ("Although all amounts were due and owing prior to claimant's death, there remains a question as to whom the award should be paid now that claimant is deceased. We therefore remand this issue to the Commission for further proceedings").

Citing *Electro-Motive*, employer attempts to distinguish the instant case because there was no award at the time of death. However, in *Electro-Motive*, the decedent filed an application for adjustment of claim on August 21, 1981. Decedent died on May 13, 1984. The arbitrator did not enter his decision until October 10, 1986, awarding decedent $46^3/7$ weeks of temporary total disability (TTD), $839 in medical expenses, and $282.25 per week for 150 weeks pursuant to section 8(d)(2) of the Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(d)(2)) for PPD to the extent of 30% of the man as a whole.

Thus, precedent supports our conclusion that if a claimant in a workers' compensation case dies during the pendency of the claims process, the claim shall proceed as if death had not occurred. If the claim ultimately prevails, all compensation that would have been awarded to the claimant shall be paid to the dependents of the deceased claimant. Any other claims any dependent might have as a result of the claimant's death shall proceed unaffected.

The Commission's finding that "the living miner's claim abates at the death of a miner" is contrary to law. As the Commission has already determined that "decedent suffered from occupationally related [COPD], chronic bronchitis, and CWP and its sequelae which caused a timely disablement," we remand this cause to the Commission to calculate the disability benefits to which decedent is entitled.

For the reasons stated, we affirm the circuit court's order confirming the Commission's decision in case No. 4—07—0905WC.

For the reasons stated, we reverse that portion of the circuit court's order confirming the Commission's finding that "the living miner's claim abates at the death of a miner," in case No. 4—07—0907WC, and remand this cause to the Commission for further proceedings consistent with this opinion.

No. 4—07—0905WC, Affirmed.
No. 4—07—0907WC, Reversed and remanded with directions.

GREIMAN, GROMETER, HOLDRIDGE, and DONOVAN, JJ., concur.